PATHE EXCHANGE, INC., Plaintiff, *v.* GEORGE H. COBB and Others, as Constituting the Motion Picture Commission of the State of New York, Defendants.

Third Department, July 6, 1922.

Constitutional law — motion picture censorship — Laws of 1921, chap. 715, requiring motion picture films to be censored does not, in respect to its application to " Current Events " films, violate the State Constitution, art. 1, § 8, or 14th Amendment of United States Constitution — such films when used in place of amusement for pay no part of press of country — statute valid exercise of police power — *motion pictures produced from news films and newspapers distinguished.*

Chapter 715 of the Laws of 1921, requiring motion picture films to be censored by the Motion Picture Commission of the State of New York prior to their being sold, leased or loaned for exhibition at any place of amusement for pay or in connection with any business in the State of New York, does not in respect to its application to " Current Events " films, violate section 8 of article 1 of the State Constitution or the 14th Amendment to the Constitution of the United States, although said films are simply photographs of actual events and happenings, containing at appropriate places brief words and phrases introductive and explanatory of the photographs, to be shown in greatly enlarged scale on screens by means of projecting machines, as such films cannot be placed in the same legal category as newspapers, and a bi-weekly news film, so far as it becomes a part of a spectacle in a place of amusement, is no part of the press of the country.

The statute is a valid exercise of the police power of the State for the preservation of the morals of the people and does not deny to producers of such films the equal protection of the laws or deprive them of property without due process of law or interfere with the freedom of the press.

The distinction between a newspaper and a motion picture produced from a news film lies in the fact that the latter is a spectacle or show rather than a medium of opinion and the latter quality is a mere incident to the former quality.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

The question is whether chapter 715 of the Laws of 1921 is in violation of section 8 of article 1 of the Constitution of the State of New York and of section 1 of the 14th Amendment to the United States Constitution and void in so far as the same compels the publishers of motion picture news reels to submit such "Current Events" films to the Motion Picture Commission of the State of New York to be censored prior to exhibiting or to selling, leasing or lending for exhibition at any place of amusement for pay or in connection with any business in the State of New York.

The plaintiff is a domestic corporation with its principal office in New York city. The defendant is the Motion Picture Commission of the State of New York created and acting under chapter 715 of the Laws of 1921 of this State.

Since 1914 the plaintiff has been producing, making, issuing and distributing twice each week on stated days a motion picture "Current Events" film under the designation of "Pathe News."

Such films contain no portrayal of imaginary scenes or occurrences staged or created for the purpose of making pictures and are not reproductions or re-enactments of the events depicted. On the contrary, the said films consist of photographs of actual transpiring events and happenings. The pictures are taken on the ground exactly as they exist or occur with motion picture cameras.

After the pictures have been taken the films are developed by the usual processes of photography and distributed in the following manner: First, a negative is produced and from such negative an indefinite number of positives are printed. Such positives are then leased to and distributed among exhibitors or others who obtain them upon plaintiff's prescribed terms. The persons who thus obtain the pictures cause them to be shown and reproduced in greatly enlarged scale on motion picture screens by means of intense light passed through said positives. This is done by means of motion picture projecting machines. Such films contain at appropriate places brief words and phrases introductive and explanatory of the events or things being shown.

Any one having a suitable projecting machine is able to exhibit the pictures in any place where suitable lighting facilities are

available. The natural result is that exhibitions of " Pathe News " are frequently made in private homes, army camps, passenger vessels, warships, town halls, churches, schools, meetings, private gatherings and in many other places and particularly in public places of amusement for pay, known as motion picture houses, at popular prices. So far as the places mentioned other than the motion picture houses are concerned the " Current Events " pictures and explanatory reading matter are often and quite generally shown without any charge for admission being made. While the plaintiff does not participate in such exhibitions, its business in part consists in leasing such films for use in the above-mentioned places.

Prior to the time when chapter 715 of the Laws of 1921 went into effect the plaintiff made contracts with a large number of persons, firms and corporations by which the plaintiff undertook to supply its " Current Events " films when and as issued, to such persons, firms and corporations at a certain price. The law complained of makes it necessary for the plaintiff to secure a permit and pay a license fee, before it leases, sells or lends its news reels for exhibition " at any place of amusement for pay or in connection with any business in the State of New York." Besides the fact that this requirement interferes with plaintiff's business it adds to the cost of the films to be supplied pursuant to the contracts mentioned in this paragraph. The consequence is that the plaintiff cannot recover from that class of subscribers the fees which the Motion Picture Commission claims it is entitled to receive before licensing " Current Events " films. The defendant herein, said Commission, has threatened plaintiff with prosecution in case the plaintiff shall sell, lease or lend its news reels for exhibition " at any place of amusement for pay or in connection with any business in the State of New York," unless there is at the time a valid license or permit therefor outstanding. It has also insisted that such " Current Events " films shall contain for exhibition upon the screen identification matter in substance, style and length as prescribed by the Commission.

Defendant has caused wide publicity to be given to its intention to prosecute under the penal provisions of said chapter 715 of the Laws of 1921 every person who shall exhibit in the State of New York motion pictures, including " Pathe News " or " Current Events " films such as are produced, issued and distributed by plaintiff as above set forth unless there is at the time in full force and effect a valid license or permit therefor of said Motion Picture Commission.

The announced purpose of the defendant to prosecute the exhibitors of unlicensed pictures has made it impossible for the plaintiff

to lease, issue and distribute unlicensed " Current Events " films to customers who contemplate using the same in places of amusement for pay or in connection with any business within the confines of this State. The enforcement of such requirements will result in the loss to plaintiff of its New York State business in such " Current Events " films which has been quite profitable in the past, unless plaintiff complies with said statute by obtaining licenses or permits as therein prescribed.

The parties submit their respective contentions as to constitutionality to the court pursuant to sections 546–548 of the Civil Practice Act and agree that the court, which is requested so to do, shall declare the rights and legal relations of the parties in the premises pursuant to section 473 of the said Civil Practice Act, relating to declaratory judgments and the Rules of Civil Practice* applicable thereto; all without costs to either party as against the other.

*Coudert Brothers* [*Frederic R. Coudert, Howard Thayer Kingsbury, P. A. Shay* and *Thomas W. Kelly* of counsel], for the plaintiff.

*Charles D. Newton, Attorney-General* [*Arthur E. Rose, Second Deputy Attorney-General,* of counsel], for the defendants.

HINMAN, J.:

Section 5 of chapter 715 of the Laws of 1921 contains the limits of the power and authority of such Commission so far as material here and reads as follows: " The Commission shall cause to be promptly examined every motion-picture film submitted to it as herein required, and unless such film or a part thereof is obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition would tend to corrupt morals or incite to crime, shall issue a license therefor."

The pictures to which the provisions of section 5 are applicable are those which come under the provisions of section 12 of said act, which reads as follows: " It shall be unlawful to exhibit, or to sell, lease or lend *for exhibition at any place of amusement for pay or in connection with any business in the State of New York,* any motion-picture film or reel, unless there is at the time in full force and effect a valid license or permit therefor of the Motion Picture Commission of the State of New York * * *."

The plaintiff claims that chapter 715 of the Laws of 1921 violates the constitutional guaranty of freedom of the press in that it lays a previous restraint upon the publishing of " Current Events " films and that the statute denies to plaintiff the equal protection of

---

* See rule 210 *et seq.*— [REP.

the laws and deprives plaintiff of property without due process of law in violation of the Constitution of the United States.

The argument of the plaintiff as summarized in the brief of its counsel is as follows:

" 1. There is no doubt that a motion picture news reel containing photographs of actual events of public interest with explanatory reading matter is in principle the same as an ordinary newspaper. No logical or reasonable distinction can be made between the two media of expression. The fact that in the one case paper and ink are employed and in the other case that the celluloid ribbon is utilized should not afford any basis for distinguishing between the two methods of conveying facts or ideas.

" 2. It would be inadmissible to hold that freedom of speech and of the press is confined exclusively to the spoken and written word, for this would give no meaning to the word ' publish ' which is found in section 8, article 1 in the Constitution of the State of New York. The circumstance that matters of news interest are conveyed to the public through the instrumentality of *writing and pictures* is immaterial. It is the news that is privileged, not the method of its publication.

" 3. It is a well known historical fact that the use of writings is nothing more or less than the development of the old picture writing which is described and illustrated in practically. all elementary textbooks on ancient history. It would be as logical to exclude motor driven vehicles and steamships from the operation of the ' commerce ' clause in the Federal Constitution* simply because the fathers of this country were accustomed to transport their merchandise by means of horse-drawn wagons and sailing vessels.

" 4. It is indisputable that the publishers of newspapers cannot lawfully be compelled to submit their news items to censorship before releasing said news items to the public.

" 5. If the publishers of newspapers or news reels present matter which is unfit for public consumption, the Legislature has power to and should punish the offending newspapers or news reels as the case may be.

" 6. The State of New York cannot lawfully discriminate between different classes of newspapers or between different physical methods of publishing sentiments of news. To subject certain types of newspapers or certain methods of publication to restrictions, from which other kinds are exempt, violates the XIVth Amendment to the Constitution of the United States by denying the equal protection of the laws. There is no difference so far as

---

* See U. S. Const. art. 1. § 8, subd. 3.— [REP.

constitutional law is concerned between a current events film and a newspaper, and chapter 715 of the Laws of 1921, as applied to news films accordingly violates the XIVth Amendment.

" 7. The Motion Picture Censorship Law forbids the plaintiff to publish its news items without first obtaining a license and paying a license fee therefor. The law thus deprives the plaintiff of the right to sell its news items while they still retain their element of freshness which constitutes their commercial value and, therefore, takes the property of the plaintiff without due process of law in violation of the Federal Constitution, as well as the Constitution of the State."

Section 8 of article 1 of the New York Constitution reads in part as follows: " Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

If this act constitutes a valid exercise of the police power for the preservation of the morals or welfare of the community, it does not operate to deprive the plaintiff of property without due process of law. Unless the bi-weekly motion picture news reel is in the same legal category as a newspaper and the liberty of the press would protect newspapers from such restraint as is here sought to be exercised, there would be no denial of the equal protection of the laws. The main question before us, therefore, is whether the bi-weekly motion picture news reel is in the same legal category as a newspaper and whether the restraint caused by this act is of such a character as to be a violation of that provision of our State Constitution relating to the liberty of the press.

To determine whether these two are in the same legal category, we must inquire whether they are in the same practical category; whether there is a proper and justifiable distinction between them, considering the character, extent and purpose of the law; whether there is such a difference in the situation and circumstances of the two as suggests the necessity or propriety of the distinction made; whether the character of business of the one lies at the root of the evil aimed at, as distinguished from the business of the other; in short, whether this moving picture business in that phase of it which is sought to be restrained by this legislation is a part of the press of the country or an organ of public opinion within the meaning of section 8 of article 1 of our State Constitution.

Any substantial difference between particular businesses may serve as a reasonable basis for a classification. Children are peculiarly entitled to legislative protection as a class and legislation aimed at their protection does not fall under the constitutional

prohibition of unfair discrimination. Consideration may also be had of the matter of sex in determining a question of the public morals or welfare.

We cannot say that the moving picture is not a medium of thought but it is clearly something more than a newspaper, periodical or book and clearly distinguishable in character. It is a spectacle or show rather than a medium of opinion and the latter quality is a mere incident to the former quality. It creates and purveys a mental atmosphere which is absorbed by the viewer without conscious mental effort. It requires neither literacy nor interpreter to understand it. Those who witness the spectacle are taken out of bondage to the letter and the spoken word. The author and the speaker are replaced by the actor of the show and of the spectacle.

Our public libraries are filled with books not commonly read because the author has not caught the attention of the public without which the book becomes a dead letter. Our public libraries are filled with books which without the necessary literacy stand uninterpreted and equally dead in the field of thought as an organ of opinion. The newspaper offers no particular attraction to the child and much that is contained in it that might be harmful to the child is not understood by it for lack of literacy or imagination. But the moving picture attracts the attention so lacking with books or even newspapers, particularly so far as children and the illiterate are concerned, and carries its own interpretation. It needs no other illumination than the bright light behind the film which moves so rapidly that it reproduces the life of the world as it in fact exists and as it is portrayed in fiction, the evil as well as the good. Its value as an educator for good is only equalled by its danger as an instructor in evil. " He who runs may read " the thought purveyance of the moving picture. The child soon becomes sophisticated, as he attends this school of experience, where current events may be revealed in all their nakedness, where the pictorial drama may illustrate the experiences of mankind, the good and the bad, where character may be shaped most readily the one way or the other according to the sentiments conveyed. The actors in the picture become in fact the associates of the child as effectually as though they were their living and breathing companions, so realistic is the picture, so perfectly photographic of real life. Nothing is left to the imagination as with the printed page. The picture creates its own atmosphere so vividly, so attractively, that even the child and the illiterate adult may see and learn.

All of this argues, of course, for the proposition that the motion picture is a medium of thought, but it argues for more. All such

argument has been presented to the United States Supreme Court in relation to the motion picture performance generally, but that court said that freedom of speech and of the press was not violated. " The judicial sense supporting the common sense of the country is against the contention." (*Mutual Film Corp.* v. *Ohio Industrial Comm.*, 236 U. S. 230.) Expression of thought does not characterize its essential quality. Its characteristic feature is that it is a " spectacle " and it is because it is a spectacle or a show that spectators are attracted to see with their eyes the thing already published in the press. The purveyance of thought and instruction is just as incidental to the " show," in principle, as it is with the circus or any theatrical performance. It is the fact that it is in each case the performance of an actor which characterizes the thing done and that " acting " is the essential quality of the business. Moreover, it is not the news that is the essential thing privileged by the Constitution. It is freedom of expression of thought, involving conscious mental effort, not mere action. It is the right to " publish " one's " sentiments " on all subjects to which the Constitution expressly refers. " Sentiments," according to Webster, mean " a decision of the mind formed by deliberation or reasoning; thought; opinion; notion; judgment; as, to express one's sentiments on a subject." If the motion picture business generally is not a part of the press of the country, as the Supreme Court has concededly said, it seems to be a reversal of proper emphasis to lay particular stress upon the " news " feature of the press, which seems to us to be at most an incident to the thing privileged by the Constitution.

The " show " business is clearly different from the newspaper business and those who engage in the show business are none too likely to confine their productions to the things which are just, pure and of good report; but in order to continue to attract patrons, many would cast discretion and self-control to the winds, without restraint, social or moral. There are those who would give unrestrained rein to passion. If the thing be true and real, they would reveal it in its utter nakedness. They appreciate the business advantage of depicting the evil and voluptuous thing with the poisonous charm. Certainly there are some things which are happening in actual life to-day which should not have pictorial representation in such places of amusement as are regulated by this legislation, places where the audiences are not confined to men alone or women alone and where children are particularly attracted.

This State and other States have considered it necessary in the interest of public morals and welfare to supervise the moving pictures which are displayed in such places of business. The effect of the act which we have under consideration is to simply prohibit

the use of any uncensored films "at any place of amusement for pay or in connection with any business in the State of New York," and this is done by providing a penalty against those who engage in that particular business, either by exhibiting such uncensored films or by selling, leasing or lending for such exhibition. The statute does not prohibit the making or selling of films but regulates only the use of the thing in a certain way. The State simply says that if a person desires to make a particular use in business of such film it must be subjected to censorship first, in a manner and for a purpose justified under the police power. The State does not say that the films cannot be produced and sold. The act of the State simply results in justifiably destroying one of the markets for their sale unless the act is complied with. It is the show or spectacle which is aimed at by the statute and such a show or spectacle is certainly not an essential incident to the conduct of the press. It is a thing separate and apart from it. We do not think that the bi-weekly motion picture news reel, so far as it becomes a part of such show or spectacle in such a place of amusement, is a part of the press of the country. It is, therefore, subject to the regulation of the act in question. (See *People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96.)

A similar statute in Ohio (Ohio Laws of 1913, chap. 161; 103 Ohio Laws, 399, H. B. No. 322; Ohio Gen. Code, § 871-46 *et seq.*) under a State constitutional provision (Ohio Const. art. 1, § 11) identical with that of our State has been approved by the United States Supreme Court in *Mutual Film Corp.* v. *Ohio Industrial Comm.* (236 U. S. 230). (See, also, *Mutual Film Co.* v. *Ohio Industrial Comm.,* 236 U. S. 247; *Mutual Film Corp. of Missouri* v. *Kansas,* Id. 248.) The case last cited construed a similar statute of Kansas and the Bill of Rights of the Constitution of that State. (See Kan. Laws of 1913, chap. 294; Kan. Gen. Stat. 1915, § 10774 *et seq.*; Kan. Const. Bill of Rights, § 11.) Counsel for the plaintiff urges that these decisions are not decisive of this case, in view of the fact that the Supreme Court was dealing with the moving picture business as a whole without particular regard to "Current Events" films. We think that the opinions of that court as expressed in those cases indicate a more comprehensive determination, reaching the question raised here. If, however, the question has not been decided under such authority, we think that upon principle the plaintiff cannot succeed and that judgment should be entered herein in favor of the defendant, without costs.

All concur.

Judgment directed in favor of the defendant, without costs.