Liberty Mutual Insurance Company, a Corporation; American Mutual Liability Insurance Company, a Corporation; Lumbermen's Mutual Casualty Company, a Corporation; Hardware Mutual Casualty Company, a Corporation; Employers' Mutual Indemnity Corporation, a Corporation; Paul C. Kinsey, Arnold M. Stephenson, Francis S. Mulholland, John M. Siebert and Glen E. Kohl, Appellants, v. E. W. Jones, General Chairman of Bar Committees of the State, and John C. Grover, Grover C. Sibley, Fielding P. Stapleton and H. E. Shepherd, Members of the Advisory Committee to the General Chairman of Bar Committees of the State.—130 S. W. (2d) 945.

Court en Banc, July 5, 1939.

934

*Hogsett, Murray, Trippe & Depping* for appellants; *Woodward & Evans* and *Mosman, Rogers, Bell & Buzard* for Liberty Mutual Insurance Company; *Leahy, Walther, Hecker & Ely* for American Mutual Liability Insurance Company; *Stringfellow & Garvey* for Lumber-

men's Mutual Casualty Company; *Grover C. James,* for Hardware Mutual Casualty Company; *James R. Sullivan* for Employers' Mutual Indemnity Company and Employers' Mutual Liability Insurance Company.

*Mark Eagleton, Clif Langsdale, Roberts P. Elam, Harry Gershenson, Chet D. Vance, Staunton E. Boudreau, Frank Brockus, Charles V. Garnett, W. F. Woodruff, Roy D. Williams, Stepen K. Owen, J. R. Baker, Ben Neale, Franklin E. Reagan* and *William H. Becker* for respondents; *Clark, Boggs, Peterson & Becker* and *E. W. Jones* of counsel.

938

W. *Marvin Woodall, Roderick Beddow, George R. Stuart, Jr., Harold M. Cook, Horace C. Wilkinson* and *A. A. Carmichael,* Attorney General of Alabama, for Alabama State Bar Association, and Birmingham Bar Association.

*R. M. Kelly,* President of State Bar of Mississippi, *amicus curiae.*

*Jones, Hocker, Gladney & Grand* for Travelers' Insurance Company, Aetna Casualty & Surety Company, Hartford Accident & Indemnity Company, New Amsterdam Casualty Company, Fidelity & Casualty Company of New York and Association of Casualty & Surety Executives, *amici curiae.*

*Joseph A. Padway* for American Federation of Labor, *amicus curiae.*

*C. D. Cass, Charles L. Carr* and *Henry H. Fryling* for American Transit Association.

*Paul Vallee, Marion P. Betty, Jerry Giesler, Harry L. Price* and *Esmond Schapiro* for State Bar of California, *amicus curiae*.

946

*Cuthbert S. Baldwin* for New Orleans Bar Association.

*John Doerfer, Rudolph A. Schoenecker, John Waddleton* and *Joseph Doucette* for Junior Association of Milwaukee Bar.

*Cave & Hulen* and *A. D. Sappington* for Association of Farmers County Mutual Fire Insurance Companies of Missouri, *amicus curiae.*

ELLISON, J.—The appellants are six mutual casualty insurance companies doing business in this State, and their respective Missouri claims managers. They appeal from a decree of the Circuit Court of Boone County, which dismissed their petition for a declaratory judgment under Laws 1935, page 218 (Mo. Stat. Ann., sec. 1097a et seq., p. 1388), and granted an injunction prayed by respondents' cross-bill. The injunction enjoined appellants from adjusting claims against their insured (and other related activities) through lay employees, on the ground that such acts constitute "law business" and the performance thereof is the unlawful "practice of law." The respondents are the General Chairman of the Bar Committees of the State of Missouri and the members of his Advisory Committee, appointed under subdivisions 13 and 14 of Rule 36 of this court. By stipulation the parties adopted the unusual course, not provided for by the law of this State, of trying the case before three circuit judges: Hon. Walter M. Dinwiddie, regular judge of the Boone County Circuit Court, together with Hon. James Wesley McAfee of St. Louis, one of the judges of the Eighth Circuit, and the late Hon. E. M. Dearing of Potosi, judge of the Twenty-first circuit, sitting as "advisory" judges. Judge McAfee filed an opinion substantially concurring in the decree. Judge Dearing filed an opinion dissenting therefrom.

The record is long, containing 1053 pages. In addition to the elaborate briefs of counsel for the respective parties, briefs have been filed supporting the position of the appellants by *amici curiae* representing the Association of Farmers' County Mutual Fire Insurance Companies of Missouri; the American Federation of Labor; five casualty insurance companies and the Association of Casualty & Surety Executives; and the American Transit Association. In support of respondents' contentions briefs are filed by *amici curiae*: Hon. A. A. Carmichael, Attorney General of Alabama, representing the Alabama State Bar Association and the Birmingham Bar Association; the Committee on Claims Adjusters of the State Bar of California; the Junior Association of the Milwaukee Bar; Hon. R. M. Kelly, President of the State Bar of Mississippi; and Hon. Cuthbert S. Baldwin, individ-

ually and as President of the New Orleans Bar Association. Altogether the briefs contain 1205 pages.

The appellant companies are licensed under Section 5854, Revised Statutes 1929 (Mo. Stat. Ann., p. 4472), and have been doing business in this State for periods ranging from four to eighteen years, each maintaining one or more claims offices in charge of a manager who is not a lawyer. Altogether they employ 33 claims adjusters, of whom 19 are laymen. Under authority of Section 5844, Revised Statutes 1929 (Mo. Stat. Ann., p. 4468), they write numerous kinds of casualty insurance including that protecting the insured against liability to third persons for negligence in specified circumstances, or under the Workmen's Compensation Act; also insurance protecting the insured against bodily injury or death by accident, disability by sickness, and damage to his own property from various causes.

Where the insurance protects the insured against liability to third persons, under Section 5898, Revised Statutes 1929 (Mo. Stat. Ann., p. 4499), the obligation of the insurance company runs directly to the third party claimant—it is not a mere indemnitor of the insured. The same is true under the Compensation Act. [Sec. 3325, R. S. 1929, Mo. Stat. Ann., p. 8262.] The insurance company adjusts all such claims or assumes the defense thereof in court through its own counsel, even though the amount of the claim exceeds the insurance coverage and the policyholder is personally liable for the excess. In such event, however, the company usually invites the insured to employ personal counsel representing him in the trial. Sometimes, where the company disputes or is doubtful of its liability for the casualty, it defends the case under a "non-waiver agreement," whereby it reserves the right to dispute liability on any judgment that may be recovered by the claimant. In this case we are chiefly if not entirely concerned with the handling of claims before they enter litigation.

Taking the usual course of a typical claim, suppose John Smith has a policy in the Alpha Casualty Company protecting him against liability to third persons for negligence in the operation of his automobile, and also insuring him against property damage thereto. He has a collision with another motorist, and sends in a notice to the company stating the facts. On receipt thereof a clerk makes up a file including the office copy of any applicable policy, and presents it to the claims manager. The latter, for technical and administrative reasons, first makes a tentative "reserve" or estimate of what the claim will cost, and sends it in to the home office. Unless it is clear that there is no liability, as where the policy has lapsed, or covers some automobile other than the one mentioned in the notice, the manager next assigns the claim to an adjuster for investigation.

The adjuster interviews the insured, the claimant, the witnesses, takes statements, makes measurements, photographs and the like. He views the wrecked automobiles, consults experts as to the amount

of property damage and the extent of the personal injuries, and makes a report to the claims manager, giving his views as to the probable amount required to settle the claim. But he expresses no opinion on legal questions to the company or the claimant, though he may quote what counsel for the company has said. In each claims office there is a salaried attorney who passes on all legal questions arising there. Subject to supervision of the home office the lay claims manager passes on the amount to be paid in the settlement of all claims. The facts are digested in the claims office and perhaps referred to the home office. Thereafter, the adjuster is sent out again to negotiate with the claimant for a settlement. If he succeeds, he selects the appropriate form of release out of a number prepared by the insurance company's counsel, fills in the blanks, has it executed by the claimant, gives him a voucher or draft, and closes the case. Lay employees may participate in informal conferences with or before the Workmen's Compensation Commission but not in formal hearings. Within limits, the claims manager and his adjusters have authority to settle claims without communicating with the home office. In a typical set-up shown in evidence the limit for the claims manager was $500, for one adjuster $200, and for another $100. In 60 per cent of the claims under public liability, third party policies no payment at all is made. In 19 per cent of the claims the payments do not exceed $10; in 6 per cent do not exceed $25; in 3 per cent are not over $50; in 3 per cent not over $100; and only 3 per cent are more than $100.

Early in 1937 the then General Chairman of the Bar Committees and his Advisory Committee, after study of the course followed by casualty companies in the adjustment of claims, instituted certain legal proceedings against several of them, one for a declaratory judgment and three charging contempt of court. Two of the latter were severally against two of the appellants. In view of this aggressive action the appellant companies in May, 1937, adopted a so-called code of procedure putting the above routine in force, which is set out below:*

---

*"Each of the Mutual Casualty Companies which are members of the American Mutual Alliance, and which are doing business in Missouri, will change their procedure in Missouri so that the functions and activities of their Missouri employees will be in harmony with the following:

"(1) The preparation and filing of pleadings in all court actions and the presentation of cases in court and before the Workmen's Compensation Commission will be handled exclusively by lawyers, either salaried employees of the companies or outside counsel.

"(2) Lay employees may handle the investigation of cases and the preparation of reports of the facts ascertained in such investigation, including the securing of signed statements from witnesses.

"(3) Lay employees may negotiate with claimants or their representatives and effect settlements of claims, and in this connection may fill in, on printed forms, the releases to be executed by claimants.

"(4) Lay employees shall not draft releases; and all forms of releases

This code was submitted by appellants to the respondent General Chairman and Advisory Committee in May, 1937, but they declined to approve it, saying the question was one for judicial determination. Thereupon the appellants filed an application in this court praying leave "to institute a declaratory judgment suit in the Circuit Court of Boone County," against the respondents for the purpose of obtaining a judicial declaration and determination of all the matters and issues in controversy. The respondents filed their written consent, and this court entered its order reciting that after considering the "petitioners' application for leave to bring a declaratory judgment suit" against the respondents, "doth order that said petition or application be, and the same is, hereby allowed. And it is further considered and ordered that said petitioners may file a suit, involving the question that their lay employees, in the investigation and adjustment of claims, are engaged in the unauthorized practice of law and in the doing of law business, and prosecute the same to a final conclusion."

Appellants' petition filed pursuant to the above leave sets out at great length their method of doing business under said code adopted in May, 1937, denies that their lay employees are practicing law or doing law business, and assails Sections 11692 and 11693, Revised Statutes 1929 (Mo. Stat. Ann., pp. 621, 622), as violating Section 1 of the Fourteenth Amendment to the Constitution of the United States, and Sections 4 and 30 of Article II and Section 1 of

---

used by lay employees must be drafted by lawyers, or by the Workmen's Compensation Commission or other public authorities.

"(5) In the negotiation and settlement of claims a lay employee shall not express his opinion on any question of law or legal liability; but he may state to the claimant what the counsel for the company had advised the company as to such legal question or question of liability, provided the company's counsel has in fact given such advice in the particular case.

"(6) In each claims office in the State of Missouri there will be regularly employed a lawyer, admitted to practice in Missouri; and it will be his duty to consider and give opinions upon all questions of law and of legal liability arising in such office.

"(7) Lay employees may in reports to the company make recommendations to the company as to the amount to be paid in settlement of any claim; but in this connection the lay employee shall not express any opinion or attempt to pass upon any question of law or of legal liability; provided, however, that he may in such report state the opinion (if any) given him on the question by the company's counsel.

"(8) The claim department manager may, as executive head of the claim department, have general supervision of its administration, hiring employees and supervising their work; assigning claims to investigators and adjusters; acting as contact man with attorneys for the company; and (subject to the Home Office supervision) pass upon amounts to be paid in settlement of any given case. The lay manager shall not, any more than any other lay employee, give or express, either to the claimant or the Home Office, his opinion on any legal question or question of legal liability, but as to all such questions shall consult counsel.

"(9) Lay employees may participate in conferences with or before the Workmen's Compensation Commission; but shall not appear as an advocate in any proceeding before such Commission."

Article VI of the Constitution of Missouri. The former statute defines "practice of law" and "law business;" and the latter prohibits any association, corporation, or person other than a licensed lawyer, from practicing law or engaging in the law business, and makes a violation of the statutes a misdemeanor. The petition then avers that if appellants be wrong in their contentions respecting the unconstitutionality of the two statutes, yet nevertheless, on a proper construction the sections do not forbid the doing by appellants' lay employees of the acts pleaded. The prayer is for a declaratory judgment determining the rights, status and legal relations of the parties on the pleaded issues; that it be decreed appellants' lay employees are not practicing law or engaging in law business; that the court decree the respondents have no legal right to proceed against appellants in any form of legal proceeding on account of the aforesaid activities of their lay employees; and for further and general relief. A copy of the petition was served on the Attorney General, as required by Section 11, Laws 1935, page 219.

The respondents filed answer first denying that appellants can maintain an action for a declaratory judgment exempting themselves from the operation of the rules and decisions of the courts of this State for conduct past or future, and restraining the enforcement of the criminal laws of the State; and alleging that appellants have not come into court with clean hands after a full and frank disclosure of the facts; that there is no equity in their petition; and that they have been engaged in the unauthorized practice of law in this State for more than ten years. Following this is a counterclaim and cross-bill elaborating on the allegation last aforesaid and detailing a long course of alleged misconduct on the part of appellants' lay employees before and after the adoption of said code of May, 1937. The bill concludes with a prayer that said conduct be decreed to constitute the unauthorized practice of law and that appellants be perpetually enjoined therefrom.

Appellants contended at the trial and contend here that the sole question for decision is whether the acts performed by their salaried lay employees under said code of May, 1937, constitute the unauthorized practice of law and the doing of law business. They insist, of course, that that question must be answered in the negative. Respondents assert: (1) that the code is illegal on its face because it permits the doing of acts which constitute the unauthorized practice of law and the doing of law business; (2) and that the code is a sham and subterfuge, because under it appellants are employing inexperienced young lawyers with the high sounding title of "office counsel," who spend only about six hours in the office each day, stamping claims with a rubber stamp, on the question of liability, either "yes," or "no" or "doubtful." The rest of the time these lawyers are out of the office investigating or selling claims. Re-

spondents' position is that there are many legal questions upon which these departmental lawyers do not pass, and that their judgments are only perfunctorily rendered anyway—in other words they are only figureheads, the real decisions being made by the claims manager, their superior. We shall not go into the practices in force in appellants' offices before the adoption of the code of 1937, but shall confine ourselves to the point whether the trial court's ruling on the points enumerated in the next paragraph was correct, because that is the only substantial live issue in the case, aside from one of pleading which we shall mention presently.

The trial court's decree found that the following acts performed by appellants through lay employees in their claim departments, do not constitute ''law business'' and are not the ''practice of law:''

''1. Detection; (a) discovering of witnesses and evidence; (b) taking photographs; (c) statements of witnesses; and acts of a like nature.

''2. Appraisement of damage to physical property where liability is undisputed.

''3. Procuring execution of prepared instruments, where the lay employee exercises no discretion in selection or preparation; and payment by delivery of check, draft or payment of money in discharge of claim.

''4. Determination of or recommendation of amount to be set up as a reserve in various claims.''

On the other hand the decree found the following acts constitute ''law business'' and the performance thereof by lay employees in appellants' claim department is the practice of law,'' even though one or more licensed attorneys are regularly employed in said departments:

''First: Adjustment and settlement of claims against said companies' insured, and negotiations with claimants in respect thereto.

''Second: Selection and preparation of releases, covenants not to sue, and contracts or agreements for the settlement or compromise of claims against the companies' insured, and other like documents affecting secular rights.

''Third: Advising said companies or their insured of their, or his, legal rights.

''Fourth: Appearances before the Workmen's Compensation Commission of Missouri, together with the presentation of legal rights of others therein, at formal or informal hearings before said Commission, or one of said Commission.

''Fifth: Determination of whether or not said companies' particular insurance contracts cover a particular casualty of the insured.

''Sixth: Determination of legal liability and the extent and nature thereof, for the company or the insured, or both.''

The rulings just set out present the questions prominently in con-

troversy in the case. The decree further declared that the action, whatever its nature when instituted by the filing of appellants' petition, was converted into a suit in equity by the filing of respondents' cross-bill; and the petition was dismissed and the case decided as an equity suit on the cross-bill, by the determination of the issues as above set out. Also appellants were enjoined from doing the foregoing forbidden acts.

I. Appellants complain first of the trial court's action in dismissing their petition for a declaratory judgment and deciding the case wholly on respondents' cross-bill. Section 2 of the Declaratory Judgment Act (Laws 1935, p. 218, Mo. Stat. Ann., p. 1388) provides that "any person . . . whose rights, status or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." Section 11 of the Act provides that in any such proceeding "all persons shall be made parties who have or claim any interest which would be affected" thereby, and that if a statute is alleged to be unconstitutional "the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard."

Defending the trial court's ruling, respondents urge: (1) that the rendition of a declaratory judgment was discretionary with the court; (2) that no action for a declaratory judgment may be maintained to exempt a plaintiff from criminal prosecution; (3 that other adequate remedies were available; (4) and that the Attorney General should have been made a *party* to the proceeding under the first clause of Section 11 of the Act.

We are not impressed with these contentions. The appellants filed a petition in this court asking leave to institute a proceeding against respondents in the Circuit Court of Boone County for a declaratory judgment on the express issue here involved. Respondents filed their written consent thereto. This court thereupon entered an order reciting the premises and permitting appellants to "file a suit, involving the question that their lay employees, in the investigation and adjustment of claims, are engaged in the unauthorized practice of law and in the doing of law business." Appellants then filed their petition in the Circuit Court of Boone County in form and substance within the terms of that order. Now respondents are contending, in effect, that the leave should not have been granted because the aforesaid question cannot be determined in the proceeding.

Respondents' theory is that since Section 11693, Revised Statutes 1929 (Mo. Stat. Ann., p. 622), makes it a misdemeanor for laymen, associations and corporations to practice law or do law business as defined in the preceding Section 11692, and since appellants are ask-

ing the court to declare that under the facts alleged their lay employees are not violating those sections (or if and insofar as they are the statutes are unconstitutional) therefore they are attempting by a declaratory judgment to exempt their said lay employees from criminal prosecution, which cannot be done. But there are numerous cases in which the courts by declaratory judgment have construed or determined the validity of a statute although it imposed a punishment or penalty for a violation thereof, and the plaintiff was threatened with punishment, penalty or similar exaction.* The precise question whether an association of credit men was engaged in the unauthorized practice of law, was ruled in a declaratory judgment case, Richmond Assn. of Credit Men v. Bar Assn. (1937), 167 Va. 327, 189 S. E. 153. [See, also, Borchard on Declaratory Judgments, pp. 46, 276, 343-346, 552, 553, 562, 563, 611, 612.]

The first four cases cited below are the ones relied on especially by respondents. They hold in substance that the use of a declaratory judgment rests in the sound judicial discretion of the court, depending on the circumstances; that that form of relief is usually unnecessary where a full and adequate remedy is provided by another well-known form of action; that the purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations; that ordinarily it cannot be utilized as a device to circumvent the general rule that equity will not enjoin the enforcement of a valid criminal statute; neither will it be used to determine in advance the precise rights existing between the public and law violators on particular facts where no special circumstances require it.

■ We quite agree with all this. This new remedy cannot be made a substitute for all existing remedies, and should be used with caution. But in this case we are confronted with questions of business conduct affecting the interests of a large part of the public.

■ The criminal aspects of the case are unimportant as compared with its general import. We held in Clark v. Austin, 340 Mo. 467, 497, 499, 101 S. W. (2d) 977, 994, 996, that Sections 11692 and 11693

*Erwin Billiard Parlor v. Buckney (1927), 156 Tenn. 278, 300 S. W. 565; Lindsey v. Drane (1926), 154 Tenn. 458, 285 S. W. 705; International Mutoscope Reel Co. v. Valentine (1936), 286 N. Y. Supp. 806, aff. 271 N. Y. 622, 3 N. E. (2d) 453; Reed v. Littleton (1936), 292 N. Y. Supp. 363; Pathe Exch. v. Cobb (1922), 202 App. Div. 450, 195 N. Y. Supp. 561, aff., 236 N. Y. 539; Utah State Fair Assn. v. Green (1926), 68 Utah, 251, 249 Pac. 1016; Little v. Smith (1927), 124 Kan. 237, 257 Pac. 959; Multnomah County Fair Assn. v. Langley (1932), 140 Ore. 172, 13 Pac. (2d) 354; Tirrell v. Johnston (1934), 86 N. H. 530, 171 Atl. 641; Chung Mee Restaurant Co. v. Healy (1934), 86 N. H. 483, 171 Atl. 263; Rodgers v. Webster (1936), 266 Ky. 679, 99 S. W. (2d) 781; Maloney Davidson Co. v. Martin (1938), 274 Ky. 449, 118 S. W. (2d) 708; Department of Treasury v. J. P. Michael Co. (Ind., 1937), 11 N. E. (2d) 512. See, also, 114 A. L. R. 1361, note; 87 A. L. R. 1205, and other annotations there cited.

have a double aspect. The former is a valid legislative enactment defining the "practice of the law" and "law business." The latter provides no person shall engage in the practice of law or do law business as so defined unless he be a licensed lawyer, and no association or corporation shall do so at all. A violation of *that* section is made a misdemeanor, but notwithstanding the criminal punishment annexed, we may discipline as for contempt those who transgress the statutory defined regulations. Likewise, we think, we may and should declare the rights of the appellants in this case under the statutes irrespective of their criminal provisions, but without granting relief in its nature injunctive. And the trial court should have done likewise.

█ Respondents make the further point that the Attorney General should have been made a party to the proceeding instead of being merely served with a copy of the petition, as was done. This latter course complied with the requirement of the last clause of Section 11 of the Declaratory Judgment Act, but we need not decide whether it was sufficient or not. For respondents did not demur to the petition under Sections 770, and 774, Revised Statutes 1929 (Mo. Stat. Ann., pp. 1000, 1010), on the ground that a defect of parties was apparent on the face of the petition, and therefore must be deemed to have waived the point.

█ As a matter of fact, the trial court's decree did not pass on any of the foregoing questions, but merely held that whatever the nature of the action had been in the beginning, respondents' cross-bill covered all the issues in the case and converted it into a suit in equity; and the court dismissed the petition and decided the case on the cross-bill, notwithstanding the fact that neither the cross-bill nor appellants' brief reply raised any question concerning the unconstitutionality of Sections 11692 and 11693, as had been done in appellants' petition. Relief by declaratory judgment is *sui generis,* and while not either strictly legal or equitable, yet its historical affinity is equitable. [Borchard on Declaratory Judgments, pp. 137-138, 172, 178.] Within the limits of the statute there is no procedural reason why such an action may not be heard with a cross-action for affirmative equitable relief.

All this would make no difference were it not for the fact that respondents assert the constitutional question has dropped out of the case because the trial court dismissed appellants' petition in which it was presented, and the point was not raised in the cross-bill or appellants' reply. They say appellants should have revived the constitutional point in their *reply.* We grant the law is well settled that the interposition in a legal action of an equitable answer praying affirmative relief converts the whole proceeding into a suit in equity, Ebbs v. Neff, 325 Mo. 1182, 30 S. W. (2d) 616. But we know of no decisions holding that this warrants the dismissal of the petition

where it raises issues not presented by the answer or cross-bill and reply. Further, respondents argue that it makes no difference whether Section 11692 is constitutional or not, because the courts have inherent power to define the ''practice of the law'' and ''law business'' independent of the statute, and did so in Clark v. Austin, supra, 340 Mo. l. c. 477-8, 101 S. W. (2d) l. c. 982, and State ex inf. McKittrick v. Dudley Co., 340 Mo. 852, 858, 102 S. W. (2d) 895, 898. That is true, but we also held in the same Clark-Austin case, 340 Mo. l. c. 483, 499, 101 S. W. (2d) 985, 996, and State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 865, 871, 74 S. W. (2d) 348, 357, 361, that said Section 11692 is a valid statute enacted under the police power. The Dudley case recognizes the same fact. If that be true, there is no occasion for the courts to exercise their inherent power, provided the statute is constitutional and applicable and we find it does not frustrate or interfere with judicial functioning. Appellants have the right, therefore, to be heard on their constitutional question, since they have in part based their case on it.

■ II. We come now to the merits of the case. Section 11692, Revised Statutes 1929 (Mo. Stat. Ann., p. 621), defines the ''practice of the law'' and ''law business'' as follows (the paragraphing is ours) :

''The 'practice of the law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

''The 'law business' is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights.

''or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.''

The practice of law we defined in Clark v. Austin, supra, 340 Mo. l. c. 477-478, 101 S. W. (2d) l. c. 982, as follows (the paragraphing is ours) :

''It would be difficult to give an all-inclusive definition of the practice of law, and we will not attempt to do so. It will be sufficient for present purposes to say that one is engaged in the practice of law when he, for a valuable consideration, engages in the business of ad-

vising persons, firms, associations or corporations as to their rights under the law,

"or appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights of their clients under the law. ·

"Otherwise stated, one who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law."

The majority opinion in the same case, 340 Mo. l. c. 498, 499, 101 S. W. (2d) l. c. 995, 996, said this was equivalent to the statutory definition, and State ex rel. McKittrick v. Dudley & Co., supra, 340 Mo. l. c. 858-859, 102 S. W. (2d) l. c. 899 (2) declares both definitions are practically the same. But the fact is that the definitions are not the same, at least in terminology. Broadly speaking, the Clark-Austin definition includes under the term "practice of law" nearly everything that the statutory definition classes under two heads, "the practice of the law" and "law business." The first paragraph of the former specifies engaging in the *business* of giving advice as to legal rights ˙for a valuable consideration. The second paragraph includes appearances in court, etc., in a representative capacity, and related activities, but mentions no consideration. The third paragraph covers both classes of acts in behalf of *clients* but without requiring a consideration.

The first paragraph of the statute, defining the "practice of the law," covers appearances, in courts of record, ·etc., in a representative capacity, and technical preparation therefor, but says nothing about a consideration. The second paragraph defining "law business" includes advice and the drawing of papers relating to secular rights for a valuable consideration. The third paragraph is very broad and covers "the doing of any act for a valuable consideration in a representative capacity," for the purpose of securing for another "any property or property rights whatsoever." The Dudley case, 340 Mo. l. c. 859, 102 S. W. (2d) l. c. 899 (3), held this paragraph refers to acts requiring legal knowledge.

It must be admitted that many definitions of the "practice of law" include. acts done both in and out of court, including services where no litigation is in prospect. Nevertheless there are fundamental differences between the practice of law—in the sense of court work—and law business. While a layman may represent himself in court he cannot even on a single occasion represent another, whether for a consideration or not. And a corporation cannot represent itself in court at any time but must appear by attorney. On the other hand the doing of any single act out of court in a representative capacity that

a lawyer might do will not necessarily convict a layman of engaging in the law business. The very term itself implies that he must have *engaged in the business* or *held himself out* as some cases say. Illustrative decisions are cited below.* The holding out may be evidenced by repeated acts indicating a course of conduct, or by the exaction of a consideration.

 The law is well settled that a corporation cannot engage in the law business through its lay employees or otherwise. This was ruled in State ex inf. Miller v. St. Louis Union Trust Co., supra, 335 Mo. 845, 74 S. W. (2d) 348, where trust companies were convicted of holding themselves out to draw wills, trust agreements and the like; also in State ex inf. McKittrick v. Dudley & Co., supra, 340 Mo. 852, 102 S. W. (2d) 895, where a collection agency held itself out to collect accounts by suits; also in Rhode Island Bar Assn. v. Automobile Service Assn., 55 R. I. 122, 179 Atl. 139, 100 A. L. R. 226, where the defendant held itself out to provide counsel for the defense of its members against claims and prosecutions arising from their operation of motor vehicles, without furnishing insurance coverage. But the appellants are licensed by the laws of this State to write casualty insurance, and they are authorized as a part of that business to adjust and defend claims against the insured covered by their policies. [Breeden v. Frankford Marine, Accident & Plate Glass Insurance Co., 220 Mo. 327, 119 S. W. 576; Heman Construction Co. v. The City of St. Louis, 256 Mo. 332, 337, 165 S. W. 1032, 1033.] The question is how far may they employ laymen in the conduct of such insurance business and how far must they use lawyers.

The parties agree that in the decision of that question we cannot be swayed by any consideration such as creating a monopoly for the legal profession in the insurance business, but must be guided solely by the public interest. Indeed, some of the briefs say lawyers ultimately profit from the bungling of laymen. In discussing how the public interest may be best served, respondents point to the fact that lawyers are officers of the court; that high standards of education and conduct are exacted of them; and that they are subject to strict discipline; whereas such qualifications are not required of the lay employees of insurance companies and the latter have an unfair advantage because of their great wealth and highly organized facilities for the defense of claims. One writer says if there be any plaintiffs' lawyers who employ business solicitors called "ambulance chasers,"

---

*People v. Alfani, 227 N. Y. 334, 125 N. E. 671, Brand, Unauthorized Practice Decisions, 53; Paul v. Stanley, 168 Wash. 371, 12 Pac. (2d) 401, Brand, 170; In re Morse, 98 Vt. 85, 126 Atl. 550, 36 A. L. R. 527; Brand, 81; In re Eastern Idaho Loan & Trust Co., 49 Idaho, 280, 288 Pac. 157, 73 A. L. R. 1319, Brand, 101; In re Matthews, 57 Idaho, 75, 62 Pac. (2d) 578, 111 A. L. R. 13, Brand, 540; Id., 58 Idaho, 772, 79 Pac. (2d) 535; Childs v. Smeltzer, 315 Pa. 9, 171 Atl. 883, Brand, 311; In re Opinion of the Justices, 289 Mass. 607, 609, 194 N. E. 313, Brand, 396; Meunier v. Bernich (La. App.), 170 So. 567, 571, Brand 491.

then the claim adjusters for casualty insurance companies ought to be called "ambulance riders," because they get to the hospital first.

The fact is pointed out, too, that in recent years there has been a rapid drift of law business to insurance companies. One author is quoted thus: "A generation ago the lawyer was identified with every phase of a person's fortune. He protected him in his reckless youth, he passed upon title deeds to the new home acquired at manhood, he drew up documents relating to his business, collected the accounts, drew the will, handled the settlement of the estate, and then repeated the process with a new generation; whereas, today, the defense of reckless youth falls to the insurance company—a title company passes on the deed to the new home—a charter company incorporates the business—credit insurance companies, trade associations and collection agencies collect the accounts—and a trust company writes the will and administers the estate. Lawyers generally have protested against what they term an encroachment upon their exclusive domain." Respondents' brief enumerates 32 kinds of third party insurance procurable today, covering nearly every kind of liability to which a person might be subjected at home, in business, in travel or in sport.

On the other hand appellants say that if the strict doctrine contended for by respondents be enforced, every railroad, bus, boat or airline agent who prepares a ticket for a traveler or a bill of lading or shipper's contract for freight shipper, fills in the blanks, and explains to the recipient his rights thereunder, is engaged in law business. So, too, of the bank or loan company employee who fills out a note or mortgage in dealing with a customer; of a policeman who tells you where you may park your car, and how long; and of the employees of practically every kind of business negotiating and contracting with the public; for there are legal rules applying to all such transactions.

As to the effect of such a regime, the vice president of one of the appellant companies testified it would increase the cost of operation for his company in Missouri alone, $21,000 each of the first two years and $15,000 per year thereafter; and it was stipulated the increase for each company would exceed $7500 annually in this State. It was also shown that in 23 designated groups of business concerns throughout the United States 3,651,447 lay employees adjust and settle claims, and 3,876,162 draft or fill in contractual documents, whereas there are only 175,000 lawyers in the United States. The brief for the American Federation of Labor as *amicus curiae* states it represents 27,000 affiliated unions, with about 4,500,000 members; that the lay officers of the various international organizations draft labor contracts with employers fixing the terms of employment of their members, and union officers also adjust grievances, negotiate for the settlement of disputes, and appear before various governmental and state agencies,

pension boards, security and compensation commissions; that if all these services have to be performed by attorneys the effect upon the Federation will be drastic. The brief for the American Transit Association as *amicus curiae* states it represents many street car and bus transportation companies of the country, and that some 3000 of its lay employees would be displaced if the decree of the trial court were applied to it. The brief in behalf of the Association of Farmers County Mutual Fire Insurance Companies of Missouri, as *amicus curiae*, shows that its membership consists of small mutual fire insurance companies, usually operating in only one county and always conducted under lay management for the sake of economy.

By way of illustration respondents compare the legal profession to the medical profession and call attention to the rigid requirements in education, training and ethics exacted of the latter. To that appellants answer that in the treatment of human ills the medical profession must compete with proprietary medicines, masseurs and other physicianary professions founded on different theories, such as osteopathic and chiropractic doctors; and that the public is left free to choose between them.

Now, getting back to the specific holdings of the trial court, and keeping in mind that the casualty insurance business and the adjustment and defense of claims against policyholders by the insurer is legitimized by our statutes and decisions; and that a corporation can act only through human agency, let us take up the several items.

The trial court held first that the acts of the appellants' lay employees in investigating claims, such as discovering witnesses and evidence, taking statements, photographs and the like, is proper. There is no issue about that.

Second, the court held the appraisement of damage to physical property by such lay employees is lawful *where liability is undisputed.* And in its fourth finding the court allows lay employees to determine or recommend the amount to be set up as a reserve against outstanding claims, this being an estimate made for administrative and fiscal purposes of the sum which will be required to settle the claims. The third finding of acts forbidden prohibits lay employees from advising the companies or the assured of their legal rights, and the sixth finding holds that lay employees (including claims managers) cannot determine the legal liability of the insurer and the extent and nature thereof, for the company or the insured, or both.

We are unable to see why lay employees may make an appraisement of the damage to physical property where liability is undisputed, but cannot do so where it is disputed. After all, the question of the amount of damage to an automobile, a plate glass window, boiler or other physical property, is not a question for legal experts but a question for mechanical experts in the particular line, and there is no reason why a claim investigator or adjuster should be denied the

right to gather information on these questions from the proper sources, form his own judgment and report it to his company, whether the damage is disputed or not.

Furthermore, if a lay employee may determine or recommend the amount to be set up as a *reserve* for claims, why may he not determine or make a recommendation as to the monetary extent of the whole liability, which must be balanced by the reserve. True, this liability may include damages to person as well as property. But as to personal injuries the adjuster would also be dependent on the advice of physicians. It is not a matter for legal experts. Under the sixth clause of the appellants' code a licensed attorney is regularly employed in each claims office to pass upon all questions of law and legal liability arising in the office, and under the seventh clause lay employees are enjoined from expressing any opinion or attempting to pass upon any question of law or legal liability, other than to quote advice of counsel. So there is no reason for forbidding them to determine the *legal* liability or the nature thereof, or of advising the company or the insured of their legal rights, since they do not do that.

The third finding of acts allowed permits a lay employee to procure the execution of prepared instruments, *where he exercises no discretion* in the *selection* or preparation thereof, and to make payment by delivery of a check, draft or money in discharge of the claim. The second finding of acts forbidden restrains the lay employee from *selecting* or preparing releases, covenants not to sue, contracts or agreements for the settlement or compromise of claims against the insured, and other like documents affecting secular rights. This finding would apply even where the claim has already been compromised for an agreed sum, and only needs to be closed. The third clause of appellants' code permits lay employees to fill in on printed forms, the releases to be executed by claimants. But the fourth clause of the code provides such lay employees shall not *draft* releases and requires all forms of releases used by lay employees to be prepared by lawyers, Workmen's Compensation Commission, or other public authorities.

So this presents the question whether a lay claim adjuster may *select* the appropriate form of release from the several prepared by counsel for the company, fill in the blanks, have the instrument executed by the claimant, pay the amount already agreed upon, and close the case. We think he may, because the performance of such simple, routine services requiring only a slight knowledge of the law does not constitute law practice or business. The decisions are not all one way on this question. Some cases hold there is no such thing as a simple instrument; that a profound knowledge of the law may be required in filling out any blank form, the amount depending on the *facts* underlying the transaction. A prepared form, they say, is simply a convenience or timesaver when the facts warrant its use. Cases

expressing this view are cited below.[1] Other recent well considered cases hold to the view expressed by us below.[2] If appellants' lay employees were holding themselves out to the public as qualified to draw legal instruments and pass on a great variety of questions our view doubtless would be different. But here, so far as concerns the question presented, said employees are confining themselves to the work of taking releases of claims already settled on forms already prepared by lawyers, this being a part of the regular business of their employer. We cannot see any benefit to the public in holding such work must be done by lawyers. If, as we held in State ex rel. McKittrick v. Dudley, 340 Mo. l. c. 864, 102 S. W. (2d) l. c. 902 (14), a corporation may *collect* liquidated claims so long as it does not threaten suit, why may not its lay employee *pay* a liquidated claim and take a release on the appropriate form prepared by its counsel?

The fifth holding of the trial court on acts forbidden prohibits lay employees from determining whether the company's particular insurance contract covers a particular casualty of the insured. Sometimes it may be obvious that it does; sometimes the facts may raise questions of law calling for the professional judgment of a lawyer. But since the sixth clause of appellants' insurance code requires that the Claims Attorney in the office pass on all such questions and his advice is authoritative, we can see no reason for this holding.

The fourth finding in the degree on acts forbidden prohibits lay employees from appearing before the Workmen's Compensation Commission and presenting the legal rights of others to the Commission or any "one of said Commission, either at formal or informal hearings." The ninth clause of appellants' code allows lay employees to participate in (informal) conferences with or before the Commission, but denies them the right to appear as advocates in any (formal) proceeding before that body. Since these lay employees do not appear at formal proceedings, the only question remaining is whether they can appear at the informal conferences. This makes it necessary to inquire into the nature of these informal conferences.

■ The Workmen's Compensation Commission is an adminis-

---

[1]L. Meisel Co. v. National Jewelers' Board of Trade, 152 N. Y. Supp. 913, Brand, 28, aff. 157 N. Y. Supp. 1133; People v. Title Guaranty & Trust Co., 227 N. Y. 366, 125 N. E. 666, Brand 58; People v. Alfani, 227 N. Y. 334, 125 N. E. 671, Brand 53; In re Matthews, 57 Idaho, 75, 62 Pac. (2d) 578, 111 A. L. R. 13, Brand 540; Paul v. Stanley, 168 Wash. 371, 12 Pac. (2d) 401, Brand 170.

[2]Cain v. Merchants Natl. Bank & Trust Co., 66 N. D. 746, 268 N. W. 719, 723 (4), Brand 528; In re Eastern Idaho Loan & Trust Co., 49 Idaho, 280, 288 Pac. 157, 73 A. L. R. 1323, Brand 101; In re Matthews, 58 Idaho, 772, 79 Pac. (2d) 535; Childs v. Smeltzer, 315 Pa. 9, 171 Atl. 883, 885 (3, 4), Brand 311; In re Umble's Estate, 117 Pa. Super. 15, 177 Atl. 340, 342 (2); State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N. W. 95, 96, Brand 523; Shortz v. Farrell, 327 Pa. 81, 92, 193 Atl. 25; Detroit Bar Assn. v. Union Guardian Trust Co., 282 Mich. 216, 276 N. W. 365, 370, 281 N. W. 432, 433; Merrick v. American Security & Trust Co., (D. C. D. C.) 22 Fed. Supp. 177, aff. —; Atlantic County Bar Assn. v. Ullrich (June, 1939), — N. J. Ch. —.

trative body, belonging to the legislative branch of the government. It was created by Laws 1925, page 375, and the law was approved in 1926 on reference to the people under Section 57, Article IV of the State Constitution. [Laws 1927, p. 490.] Proceedings before the Commission are required by the statute to be "simple, informal and summary, and without regard to the technical rules of evidence." [Sec. 3349, R. S. 1929, Mo. Stat. Ann., p. 8283.] Under the same section and Section 3361, Revised Statutes 1929 (Mo. Stat. Ann., p. 8289), it has the power to make rules and regulations governing the procedure before it. It has three offices in the State, one at the capital, Jefferson City, one in St. Louis and one in Kansas City, at each of which is stationed a legal adviser who assists those having rights under the Act. He is a member of the bar.

In the event of an accidental injury the parties to a claim may enter into a voluntary agreement in settlement thereof on forms prepared and supplied by the Commission. The informal conferences mentioned above are between the parties and some member, referee or legal adviser of the Commission; and are held to encourage such voluntary settlements. They are, as the name implies, simply conferences. The settlement, if any, is made by the *parties* and is wholly voluntary. The Commission has no power at that stage of the proceeding to coerce a settlement or make an award. It has only a veto power, namely, the power to refuse to approve a settlement already made, if deemed not in accordance with the rights of the parties. Under Section 3333, Revised Statutes 1929 (Mo. Stat. Ann., p. 8267), approval of the settlement by the Commission is a prerequisite to its validity. If the parties fail to agree upon a settlement, no record is kept of the proceedings at the informal conference, but Section 3334 provides the Commission shall assist the claimant "in filing his claim and securing an early adjudication thereof." Then for the first time the proceeding becomes adversary in a legal sense. Section 3338, Revised Statutes 1929 (Mo. Stat. Ann., p. 8271), et seq. provide the procedure from then on.

■ We are clearly of the opinion that appellants' lay employees may appear in a representative capacity at these informal conferences to the same extent that they can adjust claims for their employers outside of court if at all (a question which we take up later). The fact that a representative of the Commission is present and participating at such conferences makes no difference. If the efforts to settle voluntarily prove futile and a formal adversary proceeding is instituted, the situation is changed. Respondents call our attention to DeTienne v. Wellsville Fire Brick Co., 70 S. W. (2d) 369, decided by the St. Louis Court of Appeals, saying that case holds a proceeding before the Workmen's Compensation Commission is *instituted* whenever notice of an accident is received by the Commission and docketed; that thereafter the proceeding is pending, and remains a case

until final determination thereof. That is true so far as concerns the acquisition of jurisdiction by the Commission, but is not authority for the proposition that anyone who appears at the preliminary informal conference in a representative capacity is practicing law.

The circumstances are very different from those ruled in Clark v. Coon, supra, 340 Mo. 467, 101 S. W. (2d) 977, where we held respondent Coon, a full time lay employee of a railroad corporation, was practicing law before the Public Service Commission. He appeared before the Commission in formal proceedings to obtain various certificates and permits for his employer, prepared and filed pleadings and examined and cross-examined witnesses. The views here expressed find support in Shortz v. Farrell, 327 Pa. 81, 89, 92, 193 Atl. 20, 23; Goodman v. Beall, 130 Ohio St. 427, 430-1, 200 S. E. 470, 472; People ex rel. Chicago Bar Assn. v. Goodman, 366 Ill. 346, 353, 8 N. E. (2d) 491, 111 A. L. R. 1, 302 U. S. 728, rehearing denied p. 777, 82 L. Ed. 601, 58 Sup. Ct. 138; Atlantic County Bar Assn. v. Ullrich (June, 1939) —— N. J. Ch. ——.

We know of no authority holding to the contrary. Respondents have cited us to an article in Vol. 5, No. 6 of the Unauthorized Practice News, dated June, 1939, which quotes part of an opinion from the office of the Attorney General of Minnesota, holding a layman is engaged in the unauthorized practice of law if he appears in a representative capacity before the Industrial Commission of that State. But the opinion goes on to say "this law, if enforced, provides not only protection of the public, but the court and commission receiving evidence at the trials may rely thereon, as being adduced by responsible officers of the court learned in the law." This evidently refers to proceedings where evidence is received and preserved in the record. Such is not the fact with reference to informal conferences before the Workmen's Compensation Commission of Missouri.

Respondents argue our conclusion does violence to Section 11692, supra, quoted earlier in the opinion. That section defines the "practice of the law" as "the appearance as an advocate in a representative capacity . . . or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee, or any body, board, committee or commission constituted by law or having authority to settle controversies." Respondents assert this forbids appellants' lay employees to appear at informal conferences with the Workmen's Compensation Commission because the Commission, its members and referees are "constituted by law." They say we cannot limit such appearances to bodies "having authority to settle controversies" since that phrase in the statute is in the disjunctive.

But it is to be remembered the Compensation Law was enacted ten years or more after Section 11692 was passed, so that the former prevails wherever the two are inconsistent. It is obvious that the broad

provisions of Section 11692 cannot be interpreted literally. There are many boards, committees, and commissions in this State "constituted by law," which make investigations, let contracts for public works or supplies and the like, before which lay officers or employees of business entities of one kind or another customarily appear. Certainly it would not be contended that only lawyers may come before any of these in a representative capacity. The very thing the statute is dealing with is the practice of *law*. The word "or" is often construed as meaning "and." [Words & Phrases (1st, 2nd, 3rd and 4th series).] In our view Section 11692 contemplates that the body before which the appearance is made must at least have some power to grant some right. But without giving utterance to dicta we limit our ruling to the facts of this case, and hold it is not an act of advocacy within the statute for appellants' lay employees to appear at informal conferences held under the auspices of the Workmen's Compensation Commission.

This brings us to the main and last point in the case. The trial court's first finding of acts forbidden unconditionally prohibits appellants' lay employees from adjusting and settling claims against their policyholders and negotiating with claimants in respect thereto. Is this good law? It was held in Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356, Brand 321, and Meunier v. Bernich (La. App.), 170 So. 567, Brand 491, that independent adjusters who hold themselves out to the public as being engaged in the business of adjusting, settling and collecting claims for personal injuries, are practicing law unlawfully. In the latter case this ruling was made in the face of a statute permitting such business. Respondents earnestly argue that if a lay adjuster cannot handle a claim for the injured party or the insured it would be unfair to say he can do so for the other party to the controversy—the insurer. It makes no difference, they say, whether he is in the general practice and has many clients, or is working for an insurance company on a salary and has only one client; either way he is in the business. The *act*, not the person by whom or for whom or the place where it is done, determines whether it is unauthorized law business.

Appellants answer that the insurance corporation can only act through human agency, that it is not the client of its salaried employees; and that to be engaged in the law business, as the very term implies, they must *hold themselves out to the public* as being engaged in the business of settling claims. And that thought is sustained in principle by the cases cited at the bottom of page 958, supra. The question is difficult, but we have come to the conclusion that appellants are correct in this contention. The reason why laymen are forbidden to engage in the law business is that it is detrimental to the public interest for them to represent themselves to the public as being qualified to do that business when they are not, thereby ensnaring the

public and spreading error broadcast. The cases show that in most instances such adjusters advertise extensively—which is permissible if what they do is not law business.

On the other hand, appellants' lay claim adjusters work only for their several employers, who hire and retain them with their eyes open. When they deal with claimants it is on an adversary basis, not a representative basis implying a fiduciary relation. Indeed, it might be said argumentatively that an insurance claim adjuster who is a lawyer would be better equipped to outwit the claimant than one who is not, if he were so disposed. We cannot agree the fact that a lawyer-adjuster would be amendable to bar discipline furnishes an adequate reason for requiring all adjusters to be lawyers. A lawyer must be educated in many branches of the law that he would seldom if ever be required to use as a claim adjuster. And so far as concerns the disciplining of adjusters, that can be accomplished by appropriate legislation, as has been done in fifteen states. To hold that the acts done by a lay employee, wholly independent of the circumstances in which they were done, automatically determine whether he is guilty of engaging in unauthorized law business, is to convict thousands who draw on slight routine legal knowledge in the daily work in their own limited spheres. We cannot go that far.

Accordingly, we set aside all the findings of the trial court as to acts permitted, except the first and fourth, and all the findings as to acts forbidden; and make the following findings:

1. The Court declares the law to be that the relationship existing between an appellant company and the person to whom it issues any of its forms of casualty insurance policies is that of insurer and insured, and it is not that of attorney and client.

2. The Court declares the law to be that when a lay investigator employed by any appellant company investigates for his employer the facts and circumstances relating to a casualty or claim arising under a policy of casualty insurance issued by his employer, and reports to his employer the facts ascertained in such investigation, these acts of such lay investigator do not constitute the practice of law or the doing of law business.

3. The Court declares the law to be that when a lay adjuster employed by any appellant company, in effecting settlement of a claim arising under a policy of casualty insurance issued by such company, fills in, on a printed form prepared by counsel for the company, the Workmen's Compensation Commission or other public authority, the release to be executed by such claimant, such act of such lay adjuster does not constitute the practice of law or the doing of law business.

4. The Court declares the law to be that when a lay adjuster employed by an appellant company, in the negotiation and settlement of a claim arising under a policy of casualty insurance issued by his

employer, truthfully states to the claimant or claimant's representative what the company's attorney has advised such company as to the liability of the company or its insured upon such claim, this act of such lay adjuster does not constitute the practice of law or the doing of law business; but he shall not state or act upon his own opinion as to the legal rights of the company, insured or claimant.

5. The Court declares the law to be that when a lay investigator or adjuster employed by an appellant company, in his reports to his employer, expresses his opinion as to the monetary extent of the liability of his employer, or of the insured, upon any claim which he is charged with investigating or adjusting, such acts of such lay investigator or adjuster do not constitute the practice of law or the doing of law business; provided, he shall not pass on any question of law or legal liability.

6. The Court declares the law to be that when a lay investigator or adjuster employed by an appellant company, in a report to his employer states the opinion (if any) given by the company's counsel on any question of liability upon any given claim, such act of such lay investigator or adjuster does not constitute the practice of law or the doing of law business.

7. The Court declares the law to be that when a lay investigator or adjuster of an appellant company participates in an informal conference with or before the Workmen's Compensation Commission, such conference being held by and at the instance of such Commission or its representative for the purpose of endeavoring to bring about an amicable agreement between the insurer and the injured employee as to payment of compensation, such act of such lay investigator or adjuster does not constitute the practice of law or the doing of law business; but he shall be under the same restrictions as are imposed by findings 3, 4 and 8.

8. The Court declares the law to be that when a lay adjuster or lay claims manager of an appellant company determines for his employer the pecuniary limit which his employer will be willing to offer or pay in settlement of any claim arising under a policy of casualty insurance issued by such employer, this act of such lay adjuster or lay claims manager does not constitute the practice of law or the doing of law business; provided he does not determine the legal liability of his employer or its assured, but arrives at his conclusion either regardless of legal liability or upon the advice of counsel.

9. The Court declares the law to be that when a lay employee of an appellant company exercises his judgment as to which of several forms of release prepared by counsel for the company he will use in settlement of a claim arising under a policy of casualty insurance issued by such company, neither of these acts by such lay employee constitutes the practice of law or the doing of law business.

10. The Court declares the law to be that the issuance by an appel-

lant company of a policy of liability insurance, and the acts of such company, in accordance with the terms of such policy, in interceding by an attorney at law and maintaining a defense in behalf of the insured when a claim is made or a suit is brought against the insured, do not constitute the practice of law or the doing of law business, though the amount sued for exceeds the amount of insurance coverage.

The judgment of the trial court is reversed; the prayer of respondents' answer and cross-bill is denied; the injunction granted by the trial court is dissolved; and the rights of the appellants are decreed as herein stated.

All concur.

## ON MOTION FOR REHEARING.

Respondents' motion for rehearing and to modify the opinion raises two questions which call for brief discussion. It is charged that the opinion went to some length in upholding appellants' right to challenge the constitutionality of Section 11692, supra, and then failed to rule that question. We will say now that if the statute, and particularly the broad concluding part thereof as set out in paragraph II above, forbids the doing of the things permitted by the opinion, it is that far unconstitutional, as against Section 1 of the Fourteenth Amendment of the Federal Constitution and Sections 4 and 30, Article II of the Missouri Constitution. These are the provisions invoked in appellants' petition. [See New State Ice Co. v. Liebmann, 285 U. S. 262, 278, 76 L. Ed. 947, 52 Sup. Ct. 271.]

Complaint is further made that the evidence shows appellants failed to conduct their business in conformity with the Code adopted by them in May, 1937; and that we erred in ruling to the contrary. On this point we are cited to excerpts from the testimony of appellants' witness Mulholland, where he said he settled claims "without advice." But examination of the context shows he meant without advice from the home office, not without advice of counsel. At one place he was asked if he claimed the right under the Code to settle claims in the field "without intervention of counsel." He answered in the affirmative, but on the next page of the record he explained that before such settlements were made the claim reports had been received by the office attorney and he had conferred with him. The overwhelming evidence is that the Code was adhered to. All concur.