Andrew SUCHTA, Appellant
(Defendant below),

v.

O. K. RUBBER WELDERS, INC., a Colorado Corporation, Appellee (Plaintiff below).

No. 3158.

Supreme Court of Wyoming.

Nov. 18, 1963.

Hickey, Rooney & Walton, John J. Rooney, Cheyenne, for appellant.

Lonabaugh & Lonabaugh, E. E. Lonabaugh, Sheridan, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Suit was brought by O. K. Rubber Welders, Inc., a Colorado corporation,

against Andrew Suchta of Buffalo, Wyoming, for damages in connection with an alleged conversion of personal property. Judgment in the amount of $850 and costs was awarded by the trial judge, and defendant-Suchta has appealed.

The defendant answered and appeared for trial in the district court without counsel, but he is now represented in this court by a firm of Cheyenne attorneys. They contend in his behalf: (1) the court denied defendant, appearing pro se, the same rights which he would have been afforded if he were represented by counsel; and (2) there was not sufficient evidence to support the award of damages.

The action pertains to a truing machine which is used in the tire-recapping business. It was leased by O. K. Welders to Suchta in 1954, under a written franchise agreement. The suit arose seven years later. During the trial Suchta was called for cross-examination by plaintiff's attorney.

### Treatment of Defendant

While testifying defendant said, with the court's permission, he wanted to straighten the record that he did acknowledge that the machine belonged to the company. Thereupon, the court interrupted, without an objection from opposing counsel, and said "That's as far as you can go, Mr. Suchta." It was then explained that if he wished to present evidence he should wait until he had a chance to do so.

Later, after defendant had been asked about his refusal to turn the machine over, he tried to show the court an order of repossession by the sheriff, which apparently had been served upon defendant, with the sheriff taking constructive possession of the machine. Again the court interrupted, without objection from counsel, and explained to Suchta that the testimony was volunteer testimony. Suchta then asked the court if he could be entitled to ask Mr. Meacham, the sheriff, to testify and the only answer he received was "No." It was not explained that he could at the proper time.

Pursuing the matter Suchta asked why, and the court answered by saying: "Mr. Suchta, this is a legal matter and, if you're not familiar with legal matters, I can't help it, you should have an attorney."

Inasmuch as the court's answer to defendant was to the effect that he could not call the sheriff to testify, or at least without an attorney, rather than to the effect that it could be done only at the proper time, it is understandable that Suchta may well have understood the situation to be just that—that he could not call witnesses without an attorney.

This is further borne out in the record by the fact that the judge continued with an explanation to Suchta that he could not help him, and then the statement, "And if you don't think this matter is important enough to have an attorney, why, that's all there is to it."

Again, the court declined to explain to Suchta what proper court procedure was at one point when Suchta was cross-examining a witness for plaintiff. When the witness testified part of the machine was missing, Suchta insisted it was there. Whereupon, he was challenged by the court for testifying instead of cross-examining. Suchta then asked how he could prove the part is still there, and the judge replied, "I don't know. That's up to you, Mr. Suchta."

Suchta specifically asked whether he could get on the witness stand when the time comes, and the court replied, "Do you have someone to examine you? I can't let you voluntarily testify, because Mr. Lonabaugh won't be permitted to object, in narrative form."

When the time for defendant's case did arrive, Suchta took the stand and spoke these words: "Well, the defendant would like to———" Whereupon opposing counsel interposed and suggested to the court that he could ask himself questions and answers. No doubt counsel's suggestion might be construed as an offer to stipulate to such procedure.

The court did not see fit, however, to permit it and stated: "No, he can't. That's

not the procedure. That's not the procedure recognized under the rules of the Court." Thus, it is clear defendant was precluded from testifying in narrative form and also by asking himself questions. It was not explained to him at any time how, if at all, he could get his testimony to the court without an attorney.

Indeed, it is hardly clear to us what, if any, procedure for defendant's testimony the court would have recognized, except the asking of questions by an attorney. To say that every person who is sued must engage the services of an attorney in order to have his day in court and in order to be heard by the court, would probably be a denial of due process, and we would be unable to give approval to court rules so restrictive. In any event, it has been accepted in the past without question in this court that one may appear and present or defend any action wherein he is plaintiff or defendant, without the assistance of a regularly licensed attorney. See Estate of Johnson v. Sawyer, Wyo., 379 P.2d 824; and State ex rel. Johnson v. Gage, Wyo., 373 P.2d 958.

For cases in other jurisdictions which specifically hold that a litigant has such a right, see State ex rel. Frohmiller v. Hendrix, 59 Ariz. 184, 124 P.2d 768, 772; Knapp v. Fleming, 127 Colo. 414, 258 P.2d 489; Jefferson v. British American Oil Producing Co., 193 Okl. 599, 145 P.2d 387, 388; Liberty Mut. Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 955, 125 A.L.R. 1149; and Arkansas Bar Association v. Union National Bank of Little Rock, 224 Ark. 48, 273 S.W.2d 408, 410.

■ This does not mean a party who undertakes the presentation of his own case has any greater right than other litigants. He must expect and receive the same treatment as if represented by an attorney. Morgan v. Sylvester, D.C.N.Y., 125 F.Supp. 380, affirmed 2 Cir., 220 F.2d 758, certiorari denied 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768, rehearing denied 350 U.S. 919, 76 S.Ct. 201, 100 L.Ed 805; Mon-astero v. Los Angeles Transit Company, 131 Cal.App.2d 156, 280 P.2d 187, 191.

■ We recognize that a party should not benefit from his failure to employ counsel, and it is not the function of the court to supervise laymen in the practice of law. However, the layman should not be penalized for appearing pro se. He has in fact the same rights, but no greater rights than he would have if he were represented by an attorney. Doran v. Dreyer, 143 Cal.App.2d 289, 299 P.2d 661, 662; Ackerman v. Southern Arizona Bank & Trust Co., 39 Ariz. 484, 7 P.2d 944, 945, followed Ackerman v. Kaufman, 39 Ariz. 490, 7 P.2d 946, two cases.

■ In the instant case, it should be said that opposing counsel was courteous with defendant. While the court was not discourteous, it did not exercise its discretion with respect to procedure so as to allow defendant some method of presenting his case, in a manner which would have an effect substantially similar to that employed by litigants who are represented by counsel.

*Damages*

We have previously indicated that the machine involved in this case was leased to Suchta in 1954. When asked if he had the machine in his possession, Suchta answered that he had part of it, "what's left of it." Being asked what he meant, he testified after so many years every machine will wear out to some extent. He further said there is a lot of it in the junk pile. He described the machine itself as junk, saying "that junk" is still there and he had not used it for over a year.

This testimony, indicating that the machine was in more or less of a junk or unusable condition, was not refuted, except that Mr. Dietz, a witness for plaintiff, testified in general that this type of machine does not particularly wear out unless motors burn up or replaceable parts wear out. Insofar as the testimony was conflicting, the court was privileged to believe plaintiff's witness and disregard Suchta's statements.

However, no witness except Suchta testified with respect to the shape and condition of the particular machine in question, which was at least seven years old. In fact the other witness saw none of the machine but the stand or "base part." It is our understanding of his testimony that all of the working parts of the machine, which would be the principal portion of it, were never seen by him.

With respect to value, Dietz was asked, based on "what you have seen of this machine, assuming it was a complete machine," can you give a present-day value? Of course, the witness had not seen the principal parts of the machine—only the stand. Also, there was no basis in the evidence for assuming it was a complete machine at the time of the alleged conversion. The only testimony on this point came from Suchta, and he claimed part of it was junk and part was in the junk pile.

The lease agreement relieved Suchta from liability for "ordinary wear." We have no way of knowing what the ordinary wear on this machine actually was, except from the testimony of Suchta. He proposed going to his shop and bringing into court the parts which Dietz had not seen and which were called the principal portion of the machine.

Neither plaintiff's attorney nor the court evidenced any interest in having this done, and of course neither needed to. However, it was incumbent upon plaintiff to prove to the court by competent evidence what the fair market value of this particular machine was at the time and place of the conversion. See Redwine v. Fitzhugh, 78 Wyo. 407, 329 P.2d 257, 72 A.L.R.2d 664, rehearing denied 78 Wyo. 426, 330 P.2d 112; Hamco Oil & Drilling Company v. Ervin, Okla., 354 P.2d 442, 445; and Gates Factory Store v. Coleman, 142 Colo. 246, 350 P.2d 559, 560.

We fail to see how Dietz would have any basis for valuing a seven-year-old machine, if he had seen nothing but the stand or base for it. The truth of the matter is he did not attempt to value the machine in question. Instead, he answered, these machines "today" cost upwards of $1,100, and certainly $850 or $900 would not be too much for a "good machine."

There was nothing in the evidence to justify an assumption that the machine in question would qualify as a "good machine." No other evidence was offered by plaintiff with respect to damages or with respect to the fair market value of the machine which plaintiff claims was converted, at the time and place of conversion.

There being then no basis for the award of damages, and it appearing defendant was not allowed an opportunity to fairly present his evidence without the assistance of a regularly licensed attorney, the case must be reversed for a new trial on all issues.

Reversed and remanded for new trial.