Robert GILL, Respondent,

v.

MASSMAN CONSTRUCTION CO. and the
Travelers Insurance Company,
Appellants.

No. 25401.

Kansas City Court of Appeals,
Missouri.

Oct. 5, 1970.

Gary E. Lowe, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for appellants.

Gary L. Argo and Robert E. Stewart, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a workmen's compensation case. The commission's award was in favor of the employee and it was affirmed by the circuit court. The employer and insurer appealed from only parts of the award.

It is conceded that on November 23, 1966, the claimant Robert Gill, then 58 years of age, was an employee of the Massman Construction Company and both were under the Missouri Workmen's Compensation Law; that Massman was fully insured by The Travelers Insurance Company, and on this date claimant sustained an injury by accident arising out of and in the course of such employment.

Mr. Gill was working as a truck driver. On this 23rd day of November, 1966, he was attempting to load two by fours on a flat truck bed and while on top of the load, stepped over the side of the truck and fell, catching his left arm on a part of the load. He landed on the side of his head and left shoulder and on the gravel road. Claimant estimated the fall as "around 10 foot". He reported the accident to his superintendent but went on and delivered the load. He said the accident occurred on the day before Thanksgiving and that he had the next four days off from work. He believed he had only a bruise and headache, and so did not go to a doctor until the following Monday morning. He testified that in the meantime he suffered continuously with headaches, pains in the neck and shoulder and that he took anacin frequently. On November 28, 1966, he saw Dr. William H. Duncan, the employer's doctor, who prescribed heat and massages for his shoulder; that several weeks thereafter the doctor told him that his shoulder had "frozen" and exercises of the arm and shoulder were prescribed. He testified that while taking these exercises on February 7, 1967, he felt sudden severe chest pains and was taken in an ambulance to St. Luke's Hospital in Kansas City. He was in intensive care for five days and hospitalized for 14 days. In December, 1967, he attempted to move "three or four shovels of snow" from under the wheels of a stalled automobile and again suffered chest pains. On this occasion he was taken to the Cass County Memorial Hospital in Harrisonville, Missouri, where he remained for five days. During that period he was attended by Dr. H. E. Kirsh who did not testify.

Mr. Gill has not worked since the day of the accident. He testified that his shoulder has continued to be painful; that he has been very short of breath, and able to walk only about one block at a time, and that only if he moves very slowly. He said that usually during the day he would sit at the window, watch horses (he was formerly a horse trainer) and drink coffee. Both Mr. and Mrs. Gill described pains in his neck and shoulder, headaches, and said the motion and movement of the left shoulder was quite limited.

Although Dr. William H. Duncan, the employer's physician, was called as a witness by the employer and insurer, we are considering his testimony next because his knowledge of the case and his medical services came next. Dr. Duncan qualified as an industrial practitioner with particular emphasis on the orthopedic type injury. He saw Mr. Gill first on November 28, 1966, or five days after the accident.

After clinical examination, X-rays, and after considering the patient's complaints and description of the accident, Dr. Duncan began a course of treatment. He first prescribed external heat and massages. Early in February, 1967, Dr. Duncan said that the patient's left shoulder "froze"— that is, its movement, especially circular, was greatly restricted and painful. The doctor then prescribed shoulder exercises which consisted of lifting the left arm and rotating it at the shoulder joint. The performance of these exercises required the assistance of some other person. It was contemplated that Mr. Gill would be assisted by his wife. On February 7, 1967, while taking such an exercise and while his wife was lifting and rotating his arm, the claimant suffered the severe chest pains which resulted in his hospitalization at St. Luke's where the condition was diagnosed as posterior myocardial infarction. Dr. Duncan estimated the shoulder disability when he first saw claimant to be ten percent, but said that after the shoulder became frozen the disability was thirty-five to forty percent.

Dr. H. E. Kirsh, attending physician for the Cass County Hospital, submitted his bill for $158.00, the Cass County Hospital bill was $143.70, and the St. Luke's Hospital charges were $857.39. None have been paid. The award directed appellants to pay all three directly to Mr. Gill.

The employee's chief medical witness was Dr. Selbert G. Chernoff—a practitioner of industrial and internal medicine. He first saw claimant on September 26, 1967. He took the history—learned about the accident, the shoulder injury, the exercise treatments prescribed, and the resultant pain which claimant suffered on February 7, 1967. Dr. Chernoff reviewed the St. Luke's Hospital records and said the enzyme changes and electrocardiographs demonstrated an acute myocardial infarction. He explained that "myocardial" refers to heart muscles, and "infarction" means death of tissues; that the blood vessels leading to the heart have become clogged and there is a coronary occlusion. He said proper treatment includes anticoagulants and heart rest. His diagnosis was "a healed 'old' coronary myocardial infarction, angina pectoris, mild emphysema which he really doesn't have much of; he has a frozen shoulder on the left and that is essentially it". He thought the coronary attack was caused by the shoulder exercises which the patient was taking at the time. He said these conditions were permanent and were disabling. It was the doctor's opinion that claimant was totally and permanently disabled by reason of the heart condition alone, and about fifty percent disabled based upon the shoulder. In further explanation Dr. Chernoff said that the underlying cause of angina and the infarction is atherosclerosis which in turn is an aging process, but primarily a buildup of fatty material inside the blood vessels. It was his opinion that the accident did not cause the heart attack or the atherosclerosis but the heart attack was precipitated and caused by the shoulder exercises which had been prescribed by Dr. Duncan, the employer's physician.

The commission award which was affirmed by the circuit court: (1) directed payment to claimant of $1,159.09 for medical aid not furnished by the employer and insurer. This allowance included the hospital charges of St. Luke's Hospital, the Cass County Hospital and the bill of Dr. H. E. Kirsh, who was the attending physician while Mr. Gill was hospitalized at Harrisonville; (2) allowed $564.58 for a healing period of 10⁶⁄₇ weeks at $52.00 per week from November 24, 1966 (the day following the accident) through February 7, 1967 (the day of the heart attack); (3) allowed $510.26 for permanent partial disability of 10⁶⁄₇ weeks at $47.00 per week —again for the period from November 24, 1966 to February 7, 1967; (4) allowed $13,-589.74 permanent total disability benefits of 300 weeks at $47.00 per week, less a credit of 10⁶⁄₇ weeks at $47.00 per week (this being the payment directed for permanent partial of 10⁶⁄₇ weeks, which we have just mentioned as number 3). Additional

credit of $1,569.28 was allowed for payments previously made under the award. Appellants do not contend that the allowances made under this award are mathematically incorrect or erroneously computed, but do contend that six of the official findings or conclusions upon which these mathematical computations were made are erroneous, unjustified and illegal. In Liverman v. Wagner, Mo.App., 384 S.W. 2d 107, 109, we stated, in the following language, the scope of review which an appellate court may exercise in reviewing an award by the Industrial Commission:

"An appellate court, in reviewing an award by the Industrial Commission, must consider the evidence in the light most favorable to the prevailing party. Harper v. Home Imp. Co., et al., Mo., 235 S.W.2d 558. Neither this court nor the circuit court may substitute its judgment for that of the Commission but rather must approve and affirm the Commission's award if upon the whole record it is supported by competent and substantial evidence. Constitution of 1945, Art. V, Sec. 22, V.A.M.S.; Brown v. Griesedieck Western Brewing Co. of Missouri et al., Mo.App., 250 S.W.2d 803; * * *."

■ Appellants say (1) it was error for the commission to direct that appellants pay claimant's future medical expenses without *stating specifically* the type of medical expenses to which he was entitled, and (2) it was error to order payment of the St. Luke's Hospital bill to claimant when same had not been paid by him, but rather the order should have directed payment directly to St. Luke's Hospital. Parts of Section 287.140, V.A.M.S. concern both of these contentions. We set forth the pertinent provisions:

"In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical and hospital treatment, * * * as may reasonably be required for the first one hundred eighty days after the injury

or disability, * * * and thereafter such additional similar treatment as the division or the commission by special order may determine to be necessary. * * * Where the requirements are furnished by a public hospital or other institution, payment therefor shall be made to the proper authorities. * * * "

Appellants cite Brollier v. Van Alstine et al., 236 Mo.App. 1233, 163 S.W.2d 109, 116, on the first point and cite no case on the second. In Brollier the Commission found total and permanent disability but nevertheless ordered the employer-insurer to furnish future medical treatment. The court approved such allowance and said:

"Insurer contends that such a construction as is contended for by claimant here would have the effect of requiring it to hospitalize claimant for the remainder of his life. Under the award made by the Commission herein, insurer is required to continue furnishing medical, surgical and hospital treatment; but the Commission did not order that such shall be continued for any definite period of time, to-wit, during the remainder of claimant's life. The order is based on the conditions and requirements of claimant as the same were shown to be by the evidence at the hearing upon which said order is based."

We do not regard this opinion as in any way precluding the commission from making an order covering possible future medical expenses. The order must be reasonably construed. Such medical care must flow from the accident and if any question arises in the future, the facts may again be presented to the commission for further consideration and determination. We do not know at this time, nor does the commission know, nor do the appellants know what complications medically, if any, may arise in the future. It could not probably have been foreseen that the shoulder injury accident might indirectly at least, have precipitated the myocardial infarction. Dr. Chernoff testified that claimant would need medical attention regularly for the rest of his life, certainly anticoagulants and pe-

riodic physical examinations, especially with respect to the heart. We shall not deny the right of the commission to order further medical services, but we do say that the same must be reasonably traceable to the accident, else appellants are not chargeable with such expense under the law or under the commission's order. This order might in effect be considered as being a "special order" required for medical services furnished more than 180 days after the accident, but it may not be given ·ex post facto effect.

■ The third sentence in Section 287.-140, supra, reads:

"* * * Where the requirements are furnished by a public hospital or other institution, payment therefor shall be made to the proper authorities. * * *"

Respondent contends that the phrase "public hospital" does not include St. Luke's which is a private hospital, but open generally to the public. He cites this definition of "public" from Webster's Dictionary: "Pertaining to, affecting, the people at large; generally contrasted with private." Restricted as contended by respondent, the statute would include only municipal, state and federal hospitals. As authority, respondent cites Allen v. American Life & Accident Ins. Co., Inc., Mo.App., 119 S.W.2d 450, 453, which merely holds that a statute requiring a hospital to keep records covering treatment of patients does not make such record keepers "public officials". We believe that most of our hospitals which are open to the public generally, even though privately operated and endowed, partake to a large extent of the nature of public institutions. The employer, who is liable for the cost of such hospital care, might conceivably, under some circumstances, become liable twice if he paid the employee directly, knowing the bill was unpaid. We believe the legislature had two purposes in mind: (1) it wanted to, if possible, cause workmen's compensation patients to be freely and willingly admitted to hospitals, and (2) it wanted to insure, so far as possible,

that payment for such services would be made. In our opinion the sentence quoted from the statute is a specific direction that the St. Luke's Hospital bill, which has not been paid by claimant (although three years overdue) and for which appellants are liable, be paid directly to St. Luke's. Such determination does, we believe, present purely a question of law. We shall therefore amend the judgment and award by authorizing and directing that such payment be made directly to St. Luke's.

■■ Another of the assignments is that it was "improper to allow a healing period when there was an award for permanent total disability". We are cited to no case law authority in support of this contention. Appellants' argument is that since there was a permanent total award (effective February 7, 1967) there could not properly be a healing period allowance even though the commission ruled there was only a permanent partial disability from November 23, 1966 (date of accident) to February 7, 1967 (date of coronary and commencement of permanent total award). It is true as appellants say that Section 287.200, V.A.M.S. neither mentions nor specifically authorizes allowance of healing period payments during a period of permanent and total disability. However, in the case before us, the commission awarded permanent partial based upon the shoulder injury alone from November 24, 1966 to February 7, 1967, when the heart disability began. The healing period allowance was for this period alone and Section 287.190, V.A.M.S., specifically authorizes such an allowance and award during a period of permanent partial disability. Appellants say this part of the award is unsupported by the evidence. We disagree. The evidence amply supports a conclusion that Mr. Gill's disability was permanent partial during the first period and permanent total thereafter. We deny this assignment.

■ It is also contended that there was "no sufficient competent evidence to support the finding that respondent was

totally disabled as a result of either his accident of November, 1966, or his resulting myocardial infarction in February, 1967". As appellants' position is stated in their brief, they concede the occurrence of the shoulder injury of November, 1966, the myocardial infarction of February 7, 1967, and that there is sufficient evidence to justify a finding that the infarction was induced or was causally connected with the accident, *but* that this myocardial infarction healed and there is no evidence that claimant's current condition resulted either from the accident or the infarction, or both. Such contention is denied for two reasons. First, Dr. Chernoff specifically and squarely stated otherwise. Second, in their circuit court brief, appellants stated: "The appellants do not challenge that part of the award allowing permanent total disability benefits, since there was competent evidence in the record to support that portion of the award." This point is clearly no longer available to appellants. By failure to assign it as error or brief it in the circuit court, the assignment is waived. Ayres v. Keith, Mo., 355 S.W.2d 914, 919. By specifically admitting in the circuit court that the evidence was sufficient to justify the award allowing permanent total benefits, appellants have not only conceded the point but lost the right to present the point in this court. However, in our opinion the commission finding and award of total permanent disability as of February 7, 1967, is supported by the evidence, and the evidence meets the standards set by the cases as justifying such a holding and award. Groce v. Pyle, Mo.App., 315 S.W.2d 482; Caldwell v. Melbourne Hotel Co. et al., Mo.App., 116 S.W.2d 232. We approve the finding. Appellants say, and cite opinions in support, that where the evidence is undisputed and uncontradicted, and but one inference can be drawn therefrom, the question thereby presented to the appellate court becomes one of law. We agree with the principle stated, but it is inapplicable here. Such is not this case.

■ The next to last contention is that there is no evidence that either the Cass County Hospital services or the treatment there by Dr. Kirsh were causally connected with the accident of November, 1966, or the resulting myocardial infarction of February, 1967. What we have already said disposes of this contention. This is particularly so in view of appellants' admission in their brief that there is substantial evidence to justify the commission's conclusion that the infarction of February, 1967 was induced by the attempt to carry out the prescribed shoulder exercises, and therefore attributable to the accident of November, 1966. We believe it quite reasonably follows that a recurrence of this heart condition a few months later, which was apparently immediately induced by an attempt to move three or four shovels of snow, is patently traceable to the heart condition of February, 1967, and could reasonably be expected to follow from it even though no physician specifically so stated. We believe the claimant's own testimony on this point is sufficient.

Appellants' final assignment is that it was error for the commission to rule appellants responsible for the Cass County Hospital bill of $143.70 and the bill of Dr. Kirsh in the amount of $158.00 since the same were incurred during December, 1967 and therefore more than one year after the accident because (1) same were incurred more than 180 days after the accident, and (2) were not obtained pursuant to an order of the commission. The hearing in this matter was held in February, 1968, more than fourteen months after the accident and two months after the hospitalization. So far as it appears from the evidence, the commission never made any special order authorizing such medical services or determining it was necessary. In fact, so far as the record shows, neither claimant nor anyone for him, ever made any request for such a special order from the commission. Section 287.140, which we have quoted above, provides for, first, medical services for 180 days after the accident, and

second, "additional similar treatment as the division or the commission by special order may determine to be necessary."

We believe the cases which have directly considered and applied this specific statutory provision have held that an order from the commission is necessary if the employer-insurer is to be liable. We quote briefly from four such opinions.

In Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 310, the court, after pointing out that the employee, where the employer "refuses or neglects" to provide necessary medical aid, said:

"* * * in such circumstances, the employee may procure necessary treatment (*within the statutory limitations*) * * *." (Italics ours.)

The court, in Cebak v. John Nooter Boiler Works Co., Mo.App., 258 S.W.2d 262, 266, 267, said this:

"* * * The Commission in its first temporary award found that the employer was not liable for the medical expenses in question because they were incurred after the first ninety days following the injury and without a special order for same by the Commission. This ruling was in accordance with the express provisions of Sec. 287.140(1). * * *"

Gleason v. Brashear Freight Lines, Inc., Mo.App., 188 S.W.2d 72, 76, 77, gives us this holding where the medical services were furnished more than 90 days after the accident (statutory limitation at the time):

"* * * There is nothing in this record to indicate that the commission 'by special order' or otherwise authorized the claimant to employ Dr. Nigro or that the employer authorized, consented to, ratified or acquiesced in such employment. Under such circumstances the allowance of $70 to Dr. Nigro was erroneous. * * *"

This court in Offutt v. Travelers Insurance Company, Mo.App., 437 S.W.2d 127, 131, 132, came to the same conclusion. The medical and hospital service began within the 90-day period but extended beyond, with no order from the commission. We allowed the expenses until expiration of 90 days, but denied recovery thereafter.

In the case presently before us, the Cass County Hospital bill of $143.70 and the bill of Dr. Kirsh in the amount of $158.00 were not incurred within 180 days after the accident as required by the statute, but rather more than one year thereafter and were never authorized by special order or in any other way by the commission. We hold, therefore, that same were improperly allowed and improperly included in the award. This proposition, too, we think, presents purely a question of law and may therefore be corrected by this court on this appeal. We do not mean to imply that in an emergency, a claimant must wait, thereby courting death or further deterioration, while waiting for a special order from the commission. If claimant, or someone for him, made the request within a reasonable time, then a question different from the one before us would be presented. We will cross that bridge if and when we come to it. Such an issue is not presented under the facts before us.

The judgment of the circuit court affirming the award of the commission is modified in two respects, and as follows: First, it is ordered that the hospital bill of St. Luke's Hospital, Kansas City, Missouri, in the amount of $857.39 be paid by the employer-insurer directly to St. Luke's rather than to claimant as ordered in the award of the commission. Second, the Cass County Hospital bill of $143.70 and the charges of Dr. H. E. Kirsh in the sum of $158.00 which were incurred more than 180 days after the accident, and which were not authorized by the commission, are ruled to be charges for which the appellants are not liable and the allowance therefor is stricken from the award.

The judgment and award as so modified, is affirmed.

SPERRY, C. concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.