Roger C. HIGHLEY, Respondent,

v.

Charles H. MARTIN and Joyce Martin,
d/b/a Martin Logging and Lumber
Company, Appellants.

No. 16024.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 28, 1989.

Motion for Reconsideration or
Rehearing Denied Feb. 23, 1990.

David G. Neal, Eminence, for appellants.

Winston V. Buford, Eminence, Milton B. Garber, Fulton, for respondent.

CROW, Presiding Judge.

It must have seemed like a good idea at the time.

That perhaps succinctly characterizes the way Charles H. Martin and Joyce Martin ("the Martins"), doing business as Martin Logging and Lumber Company, undertook to protect themselves financially from a claim against them by Roger C. Highley ("claimant") under The Workers' Compensation Law, chapter 287, RSMo 1986. We are aware of no factually similar Missouri case.

In an amended claim for compensation filed July 29, 1987, claimant alleged his left hand was permanently injured by a saw in an accident arising out of and in the course of his employment by the Martins. In addition to seeking compensation from the Martins, claimant also asserted a claim against the Second Injury Fund "as provided by Section 287.220 RSMo," averring: "I have been advised there is no insurance by this employer."

On January 19, 1988, claimant appeared in person with his lawyer, Winston V. Buford, before an administrative law judge ("ALJ") of the Division of Workers' Compensation ("the Division") for hearing. Charles H. Martin was present, accompanied by David G. Neal, lawyer for the Martins.

A hearing ensued, the transcript of which shows that the Martins, through lawyer Neal, admitted they were an employer under The Workers' Compensation Law on the date of claimant's accident (August 11, 1986), that claimant was employed by them that date, that claimant's accident arose out of and in the course of his employment and that he sustained an injury as a result thereof.

After two discussions off the record the parties agreed on (1) the rate of compensation per week, (2) the number of weeks of temporary total disability, (3) the amount paid claimant by the Martins after the accident—$5,400—which was to be credited against the temporary total disability award, (4) the amount of permanent disability to claimant's left hand, and (5) the number of weeks of compensation to be awarded claimant for disfigurement. The parties further agreed that the medical treatment claimant had undergone was necessary to cure and relieve him from the effects of the injury, that the charges therefor were fair and reasonable, and that claimant had traveled 6,300 miles for medical attention.

Claimant then testified briefly as to how the accident occurred and as to a conversation he had with Charles H. Martin during which Martin said he had no workers' compensation insurance.

Charles H. Martin then testified briefly that he had no insurance to pay medical expenses for any injured employee, that he had no cash to pay claimant's medical bills, and that the value of the Martins' tangible assets probably did not exceed the amount of their encumbrances.

On March 15, 1988, the ALJ entered an award in favor of claimant as follows:

| | |
|---|---|
| Medical aid (including travel) | $46,149.01 |
| Temporary total disability | 4,500.00 |
| Permanent partial disability | 14,337.50 |
| Disfigurement | 2,500.00 |
| Total | $67,486.51 |

In regard to the Second Injury Fund the ALJ found that claimant had received no money from any source to pay the medical expenses he had incurred, that claimant had no personal medical insurance and no prospects of obtaining any money, and that claimant continued to get demands for payment. The ALJ's award directed the Second Injury Fund to pay claimant's medical expenses ($46,149.01) "as provided by Section 287.220(5) RSMo." [1] The ALJ's award,

1. Section 287.220.5, RSMo Supp.1987, provides: "If an employer fails to insure or self-insure as required in section 287.280, funds from the second injury fund may be withdrawn to cover the fair, reasonable, and necessary expenses to cure

and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer.... The office of the attorney general of the state of Missouri shall bring suit in the circuit court of the county in

as the parties interpret it in their respective briefs, further provided that the amount payable to claimant by the Martins was only $15,937.50—the sum of the temporary total disability ($4,500), the permanent partial disability ($14,337.50) and the disfigurement allowance ($2,500), minus the $5,400 paid claimant by the Martins prior to the hearing.

The Martins filed a petition with The Labor and Industrial Relations Commission of Missouri ("the Commission") for review per § 287.480, RSMo 1986, alleging that immediately prior to the hearing of January 19, 1988, the parties "entered into settlement negotiations and did reach a settlement," the terms of which included the following:

"(a) The parties would proceed to a hearing on [the] claim but [the Martins] would waive all defenses and present no evidence ... and that the hearing would be conducted as a 'friendly suit' wherein [the Martins] would consent to the judgment entered by the [ALJ].

(b) When the [ALJ] would enter his findings and award and forward copies to the parties, [the Martins] would prepare and forward to [claimant] a Stipulation and Compromise for Settlement providing that, regardless of the amount of the award, [claimant] would receive and accept the sum of ... $4,500 ... in full and complete satisfaction of all of his claims against [the Martins].

(c) Upon receipt of the Stipulation, [claimant] would immediately sign it and return it to [the Martins'] counsel in sufficient time to be submitted to the [ALJ] for his approval, and the parties would request and recommend that the [ALJ] approve the settlement.

(d) ... upon the [ALJ's] approval of the Compromise Settlement, [the Martins] would immediately pay over to [claimant] ... $4,500 ... and [claimant] would enter satisfaction of the award

and make no further claim against [the Martins] for any additional amount."

The petition for review went on to allege that lawyer Neal, upon receiving the ALJ's award, prepared and forwarded the agreed stipulation to lawyer Buford for claimant's signature, that Buford returned the stipulation to Neal unsigned, along with a letter explaining that although an agreement had been reached claimant no longer intended to abide by it, and that a copy of the stipulation together with a copy of Buford's letter was attached to the petition for review. The petition prayed that the Commission, among other things, acknowledge the settlement agreement and enforce it against claimant by compelling him to accept $4,500 "as full and complete satisfaction" of the Martins' obligation to claimant, or remand the cause to the Division of Workers' Compensation "with instructions to vacate the findings and award and conduct a full and fair hearing on all the issues."

The copy of the unsigned "Stipulation and Agreement for Compromise Settlement" attached to the petition for review provided:

"The purpose of this Stipulation and Agreement is to compromise and discharge all of the liability of the [Martins] under an award ... entered on March 15th, 1988 ... and in furtherance thereof the parties hereto covenant and agree as follows:

1. The [Martins dispute] the findings and award of the [ALJ] entered on March 15th, 1988, and [intend] to request a review by the ... Commission in accordance with Section 287.480 RSMo. (1986), and if that review is unfavorable, to perfect an appeal to the Missouri Court of Appeals in accordance with Section 287.495 RSMo. (1986). Moreover, alleged employer is not insured and has not funds or resources with which to satisfy the stated award, and if steps are taken to enforce the award through levy

---

which the accident occurred against any employer not covered by this chapter as required in section 287.280. Penalty under this subsection shall be the amount withdrawn from the second injury fund for the employer's employee

... plus a fine of one hundred dollars per day, for each day of noncompliance, from the date of injury, up to a maximum of five thousand dollars; and any amount so collected shall go to the second injury fund."

or garnishment, the alleged employer will be compelled to discharge the obligation in bankruptcy which will render the award uncollectable.

2. As a result of the above, the parties stipulate and agree to settle and compromise the amount of the award due under the findings of the [ALJ] ... and that upon payment and acknowledgement of the receipt of the settlement amount, claimant shall acknowledge satisfaction of the award in full as if he had received the total amount of the award entered March 15th, 1988.

3. Claimant hereby agrees to accept ... $4,500 ... as full and complete satisfaction of the amount of the award against the alleged employer ... in the amount of ... $15,937.50 ... and upon receipt thereof shall acknowledge payment in full upon the award and shall thereafter fully release and discharge the alleged employer from any and all claims and demands arising from the award of March 15th, 1988.

4. In consideration for the reduction of the amount of the award, the alleged employer hereby waives and surrenders its right to request review of the award by the ... Commission, and further waives and surrenders its right to appeal the award to the Missouri Court of Appeals, and states that the settlement amount will be paid in full upon approval by the [ALJ] of this compromise settlement.

5. The parties further agree to jointly submit this compromise settlement to the [ALJ] within twenty ... days of March 15, 1988, and jointly requests [sic] that he approve the same and incorporate it into the record in this case."

The copy of the letter from Buford to Neal attached to the petition for review was dated March 28, 1988, and read:

"I had [claimant] in Saturday morning and presented him with your proposed Stipulation.

Your Stipulation represent [sic] our understanding as of the time of our appearance before [the ALJ] in Ironton. Since Ironton, Charles Martin apparently has lost all control of his tongue. He says he has enough money to buy you, me and the Judge, and that this whole thing has been a laugh so far as he is concerned.

For all of the foregoing, [claimant] now is willing to see Mr. Martin go into bankruptcy if he thinks this is the way to avoid claims for injuries to his employees."

On October 4, 1988, the Commission entered a final award wherein the Commission found that the ALJ's award was supported by competent and substantial evidence and was made in accordance with The Workers' Compensation Law. The Commission affirmed the ALJ's award and made it a part of the Commission's award. The Commission's award made no mention of the alleged settlement agreement.

The Martins bring this appeal from the Commission's award. They maintain the Commission's award should be set aside on the basis of "fraud in the procurement" in that (a) claimant received the benefit of the settlement agreement when the Martins waived all their defenses and stipulated to all elements of proof necessary to establish the claim, and (b) claimant thereafter refused to abide by the agreement. The Martins ask us to compel claimant "to live up to his bargain" or, in the alternative, to set aside the Commission's award and restore the parties to the positions they occupied before the settlement was reached by ordering the case remanded to the Division for a new hearing.

Claimant responds that the Commission did not err in refusing to enforce the alleged settlement agreement because § 287.390.1, RSMo 1986, provides that no settlement agreement is valid unless approved by an ALJ or the Commission, and "no such settlement agreement was presented to the [ALJ] or to the Commission for approval and no such agreement was approved."

Section 287.390.1, RSMo 1986, provides:

"Nothing in this chapter shall be construed as preventing the parties to claims hereunder from entering into voluntary agreements in settlement thereof,

but no agreement by an employee ... to waive his rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission, nor shall an administrative law judge or the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter...."

■ In *Sheets v. Hill Brothers Distributors, Inc.*, 379 S.W.2d 514, 518[4] (Mo.1964), the Supreme Court of Missouri squarely held that an alleged contract of settlement of a claim under The Workmen's Compensation Law (as it was then known) which had not been approved by the Division of Workmen's Compensation (as it was then named) was, by reason of § 287.390.1, RSMo 1959 (identical in all material respects to § 287.390.1, RSMo 1986, quoted above) void and unenforceable in the courts. That holding has never been disturbed. It is thus evident that we cannot grant the Martins' prayer to enforce the alleged settlement agreement against claimant, as all parties agree that neither the ALJ nor the Commission approved it. That does not mean, however, that the Commission's award must be affirmed.

Claimant, as noted earlier, asserts no settlement agreement was ever presented to the ALJ or to the Commission for approval. While it is true that no written settlement agreement signed by the parties was presented for approval, it is clear that the Martins, in their petition for review by the Commission, alleged that an oral settlement agreement had been made January 19, 1988. The petition for review averred that the terms of the agreement were set forth in the unsigned "Stipulation and Agreement for Compromise Settlement" attached to the petition for review. The copy of the letter of March 28, 1988, from lawyer Buford to lawyer Neal, attached to the Martins' petition for review, contains an unequivocal—and praiseworthy—admission that the stipulation represented the understanding of the parties at the time of the January 19, 1988, hearing. There was,

therefore, ample documentation before the Commission to support the Martins' allegation that the parties, on January 19, 1988, had agreed orally on the terms set forth in the written—but unsigned—settlement agreement.

Why the Commission ignored the settlement issue is unexplained in the Commission's award. The Commission may have assumed that inasmuch as claimant never signed the agreement there was no settlement for the Commission to either approve or disapprove.

■ Nothing in § 287.390, RSMo 1986, requires settlement agreements in workers' compensation cases to be in writing and signed by the parties (though that is obviously the wise procedure, as this case dramatically illustrates). There is likewise nothing in 8 CSR 50–2.010(31), the regulation of the Division of Workers' Compensation pertaining to settlements, that, so far as we can determine, required the settlement agreement between claimant and the Martins to be set forth in a document signed by them.

■ The Supreme Court of Missouri in *Landau v. St. Louis Public Service Co.*, 364 Mo. 1134, 273 S.W.2d 255, 257[1] (banc 1954), held that an agreement to compromise and settle a lawsuit need not be in writing unless the subject matter is within the statute of frauds. *Accord: DeWitt v. Lutes*, 581 S.W.2d 941, 945[3] (Mo.App. 1979). An oral agreement settling a lawsuit is valid even though not recited in open court on the record. *Landau*, 273 S.W.2d at 257[1]; *Carroll v. Ghidoni*, 730 S.W.2d 280, 284 (Mo.App.1987).

The alleged settlement agreement in the instant case was not within the scope of the statute of frauds (§§ 400.2–201 and 432.-010, RSMo 1986). Consequently, if the parties, on January 19, 1988, indeed agreed orally on the terms spelled out in the "Stipulation and Agreement for Compromise Settlement," the fact that they never signed that document would not prevent the agreement from becoming valid and enforceable upon approval by an ALJ or the Commission.

■ It is the Commission's duty to rule upon every issue presented which pertains to a determination of liability in a workers' compensation claim; liability is not fixed until it is determined who is entitled to what from whom. *Harris v. Pine Cleaners, Inc.*, 274 S.W.2d 328, 332[3] (Mo.App. 1954), *aff'd*, 296 S.W.2d 27 (Mo. banc 1956). *Accord: Liechty v. Kansas City Bridge Co.*, 162 S.W.2d 275, 280 (Mo.1942).

Obviously the issues of (a) whether the parties in the instant case entered into an oral settlement agreement on January 19, 1988, limiting claimant's recovery from the Martins to an additional $4,500 irrespective of the amount of the ALJ's award and, if so (b) whether the agreement should be approved per § 287.390.1, RSMo 1986, are pertinent to the determination of who is entitled to what from whom. Accordingly, the Commission should have ruled on those issues.

We are aware, of course, of the scope of our review as established by § 287.495.1, RSMo 1986, which provides:

"... Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

■ We are, under the above statute, empowered to review questions of law. We hold that the Commission erred as a matter of law in failing to determine whether the parties, on January 19, 1988, entered into an oral settlement agreement as alleged by the Martins in their petition for review. Had the Commission ad-dressed that issue, and had the Commission found such an agreement was in fact made, the Commission would then have been obliged to decide whether to approve the agreement under § 287.390.1, RSMo 1986. If the agreement were approved by the Commission, the evidence of record would not support that portion of the Commission's award granting claimant a recovery of $15,937.50 from the Martins, as their liability to claimant would be limited by the settlement agreement to $4,500 (in addition to the $5,400 paid by them to claimant prior to the hearing of January 19, 1988).

It is thus obvious that a reviewing court cannot determine whether the Commission's award is supported by sufficient competent evidence in the record until the Commission resolves the settlement issue.

■ We need not, in this opinion, prescribe the procedure by which the Commission shall resolve any fact questions necessary in determining whether an oral settlement agreement was reached on January 19, 1988, or what its terms were. We observe, however, that the Commission itself is authorized to hear evidence in addition to that before the ALJ. § 287.480, RSMo 1986; *Lake v. Midwest Packing Co.*, 301 S.W.2d 834, 835[2] (Mo.1957); *Reece v. St. Joseph Lead Co.*, 465 S.W.2d 849, 852[3] (Mo.App.1971). We further note that in *Ross v. Safeway Stores, Inc.*, 738 S.W.2d 611, 617 (Mo.App.1987), one member of the Commission was of the opinion that the Commission had authority to remand a workers' compensation claim to the Division for an evidentiary hearing where the claim had been dismissed without one when the injured employee had failed to appear. If any party feels aggrieved by the method the Commission chooses to utilize on remand in finding the facts necessary to resolve the settlement issue, such party can register the complaint in a subsequent appeal, if any.

On remand the Commission must first determine whether a settlement agreement was made by the parties on January 19, 1988. At this stage of the litigation there appears to be little dispute about that, as claimant's brief states:

"Soon after the hearing with [the ALJ] had commenced, a recess was taken and settlement talks were conducted.... The Martins' attorney, Mr. David Neal, explained that 'I believed we had some viable defenses, but even if we lost, there was simply too much money involved for my clients to attempt to pay it, so they would be filing bankruptcy and in which case [claimant] would get nothing.' ... As a result of these discussions, [claimant] and the Martins agreed that they would proceed to a hearing but that no matter what the outcome of the hearing [claimant] would agree to execute settlement documents which, upon approval by the [ALJ], would require him to accept $4,500 in complete satisfaction of any judgment he might receive against the Martins.... Both parties were advised by [the ALJ] that he must approve any settlement document within 20 days of his judgment or he would lose jurisdiction."

If the Commission finds that a settlement agreement was made by the parties on January 19, 1988, the Commission must obviously find what its terms were. The Commission must then decide whether to approve the agreement per § 287.390.1, RSMo 1986. In that regard we note claimant, in his brief, maintains Charles Martin misled him by representing that the Martins had few assets and they would declare bankruptcy to avoid paying any substantial award. The Commission, of course, can consider that allegation and any others raised by either party relevant to the issue of whether the settlement agreement should be approved.

If the Commission finds that a settlement agreement was made and decides to approve it, the Commission shall enter an award that takes the agreement into account in spelling out the Martins' liability to claimant.

If the Commission finds that no settlement agreement was made, or if the Commission finds one was made but declines to approve it, the Commission shall address the Martins' allegation that they waived all defenses and allowed the hearing before the ALJ to be conducted as a "friendly suit" in the belief that a settlement agreement had been reached and this was one of their duties under it.

On that subject we note there may be a dispute as to what admissions the Martins made at the ALJ's hearing in reliance on the alleged agreement. An examination of the transcript indicates the Martins made the admissions set forth in the fifth paragraph of this opinion at the outset of the hearing prior to any agreement, and that they stipulated to the matters listed in the sixth paragraph of this opinion after the alleged agreement was made. The Commission, however, will be in a better position than us to make that determination.

If the Commission finds that no settlement agreement was made, or if the Commission finds one was made but declines to approve it, and if the Commission further finds that the Martins made any admissions or stipulations at the ALJ's hearing reasonably believing that such admissions or stipulations were being made pursuant to a settlement agreement, the Commission shall determine whether there was sufficient competent evidence before the ALJ *apart from such admissions or stipulations* to support the award. If the answer to that question is no, the award must be set aside and a new hearing must be held on the merits of the claim, as it would be wrong to base an award on admissions or stipulations made by the Martins in the reasonable belief that such admissions or stipulations were part of a settlement agreement.

Allowing claimant the benefit of such admissions or stipulations would be analogous to permitting an injured party who has entered into a compromise settlement, received the agreed consideration and signed a release, to ignore the settlement and sue the alleged tort-feasor. The Supreme Court of Missouri has held that in such circumstances a party who claims that a release signed by him was procured by fraud must, as a condition of maintaining a suit for his injuries, repudiate the release and tender back to the tort-feasor the consideration received in settlement. *Watson*

*v. Bugg,* 365 Mo. 191, 280 S.W.2d 67 (banc 1955).

Claimant should, however, receive the benefit of any admissions or stipulations made by the Martins on January 19, 1988, that were not based on an alleged settlement agreement. The object of the directions in this paragraph and the two paragraphs immediately preceding it is to restore the parties to the positions they occupied on January 19, 1988, prior to the alleged settlement agreement, if a new hearing on the merits is held.

The final award of the Commission is reversed and the cause is remanded to the Commission for further proceedings consistent with this opinion.

GREENE, J., and THEODORE B. SCOTT and JAMES L. EIFFERT, Special Judges, concur.

## ON MOTION FOR WITHDRAWAL OF MANDATE AND FOR RECONSIDERATION AND REHEARING

### PER CURIAM.

The extraordinary post-opinion activity in this appeal requires the following addendum.

After our opinion was filed November 28, 1989, no party filed a motion for rehearing or, in the alternative, to transfer the cause to the Supreme Court of Missouri within the deadline established by Rules 83.02 and 84.17, Missouri Rules of Civil Procedure (20th ed. 1989). Accordingly, our mandate reversing the final award of the Commission and remanding the cause to the Commission was issued December 14, 1989.

On December 19, 1989, the Chairman of the Commission sent a scholarly letter to the author of the opinion suggesting that the Court may have overlooked certain pertinent regulations in reaching its decision. The Chairman expressed the belief that the regulations would have affected the result reached by the Court had the regulations been brought to the Court's attention by the parties.

The Court immediately sent a copy of the Chairman's letter to counsel for the parties. The author of the opinion and the concurring judges determined that absent a request by one of the parties the Court would not reconsider the opinion on its own motion.

As of January 22, 1990, no party had filed anything in this Court as a result of the Chairman's letter. On that date the author of the opinion sent a letter to the Chairman stating that inasmuch as no party had moved the Court to withdraw its mandate or opinion, and no judge who participated in the decision had moved that the Court reconsider the case, the opinion and mandate remained in effect. Copies of this letter were sent to counsel for the parties.

On January 29, 1990, counsel for claimant filed a "Motion for Withdrawal of Mandate and for Reconsideration and Rehearing," asking the Court to reconsider its opinion or rehear the appeal in light of the regulations cited in the Chairman's letter.

The first regulation cited in the Chairman's letter is 8 CSR 50–2.010(31), the regulation of the Division of Workers' Compensation pertaining to compromise settlements. Our opinion took note of that regulation and observed that nothing in it requires a settlement agreement to be set forth in a document signed by the parties. The Chairman's letter focuses on paragraph "(B)" of the regulation which states:

"The administrative law judge shall question the parties to the extent s/he deems necessary and shall require the claimant under oath to state for the record if s/he understands what his/her rights are, if s/he is satisfied with the settlement and if s/he is requesting its approval. The employer and/or insurer shall be asked for the record whether or not they agree to the settlement."

The Chairman's letter states that in the instant case the Martins never presented the proposed settlement to the ALJ for approval even though the Martins allege the settlement was reached before the ALJ's hearing.

It is clear that nothing in paragraph "(B)" above requires a settlement agreement to be in writing in order to qualify for approval by an ALJ. It is equally clear

that in the instant case, once the parties believed they had agreed on a settlement, they should have followed the procedure set forth in paragraph "(B)" by informing the ALJ of the terms of the settlement and ensuring that the ALJ made a record as required by that paragraph. Had that been done the problems that arose after the ALJ's hearing would, in all likelihood, never have occurred.

It is inferable that the ALJ knew the parties believed they had reached a settlement, yet the ALJ did not see to it that the necessary record was made. After the hearing had commenced there were two discussions off the record, and only after those discussions did the hearing proceed in an uncontested mode. Additionally, as noted in our opinion, claimant conceded in his brief that the parties were advised by the ALJ that he "must approve any settlement document within 20 days of his judgment or he would lose jurisdiction."

There is, consequently, an indication the ALJ knew or should have known that a settlement agreement had been reached, yet the ALJ permitted the hearing to end without making the record required by 8 CSR 50–2.010(31)(B). Be that as it may, it is clear that nothing in the regulation required the settlement agreement to be in writing as a condition precedent to approval by the ALJ.

■ The Chairman's letter also directed our attention to 8 CSR 20–3.010(3)(B), promulgated by the Commission, which provides that all contracts of settlement of claims pending before the Commission by reason of application for review shall be submitted to the Commission for approval by the Commission, and to 8 CSR 20–3.060(3) and (4), also promulgated by the Commission, which, according to the Chairman, require all settlements to be in writing and signed by both the employer and employee, together with a separate statement signed by the employee under oath. According to the Chairman, the Commission was precluded by these regulations from considering the alleged settlement agreement in the instant case.

The regulations listed in the preceding paragraph do not fit the situation presented by the instant case. Those regulations, as we understand the Chairman, pertain to settlements reached after an ALJ has made an award and during the time the claim is pending before the Commission on application for review.

If a settlement agreement was made in the instant case it was made during the off-the-record discussions shortly after the start of the ALJ's hearing on January 19, 1988. By the time the case reached the Commission it is clear that claimant had repudiated the alleged settlement. The Martins, in their petition to the Commission for review, did not ask the Commission to enforce a settlement made during the time the case was pending before the Commission on application for review; the Martins asked the Commission to enforce a settlement allegedly made during the ALJ's hearing on January 19, 1988.

The Commission, of course, was free to disapprove the settlement (assuming one was in fact made on January 19, 1988). However, as explained in our opinion, if the Commission declined to approve the settlement the Commission was obliged to address the Martins' allegation that they waived all defenses and allowed the hearing before the ALJ to be conducted as a "friendly suit" in the belief that a settlement agreement had been reached and this was one of their duties under it. That issue had to be addressed because, as underscored in our opinion, claimant should not be allowed the benefit of any admissions or stipulations made by the Martins at the ALJ's hearing in the reasonable belief that such admissions or stipulations were being made pursuant to a settlement agreement if such settlement was not approved by the Commission.

We conclude that the regulations cited in the Chairman's letter do not require that our opinion or mandate be withdrawn. Claimant's motion asking that the Court reconsider its opinion or rehear the appeal is denied.