**Larry McBRIDE, Respondent,**

v.

**LEGGETT & PLATT and Continental Casualty Company, Appellants.**

No. 22650.

Missouri Court of Appeals, Southern District, Division One.

Aug. 31, 1999.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for Appellants.

Charles Buchanan, Buchanan, Williams & Ward, L.L.C., Joplin, for respondent.

JOHN E. PARRISH, Judge.

Leggett & Platt (employer) and Continental Casualty Co. (insurer) appeal an award by the Labor and Industrial Relations Commission (the commission) awarding Larry McBride (claimant) compensation, including the cost of future medical care. This court affirms.

Employer employed claimant as a yard worker. On March 18, 1992, claimant was injured in an accident that occurred during the course of his employment. The brakes on a pole truck claimant was driving failed. The pole truck collided with a concrete wall.

Claimant's knees struck the dash on the pole truck. Both knees were injured. His injuries were treated at McCune Brooks Hospital. He also received medical care from employer's company doctor. He returned to work the Monday following the accident. On June 12, 1992, claimant notified employer that he was unable to perform his job as a result of the injuries he received in the March 18 accident; that he needed medical attention. Claimant did not work after that date.

Employer's company doctor referred claimant to Dr. Mueller, an orthopedic surgeon. Claimant saw Dr. Mueller on June 16, 1992. He continued to see him until October 22, 1992, when employer suspended medical care.

Claimant contacted another physician, Dr. Paul W. Toma. He saw Dr. Toma three times. After consultation and treatment by Dr. Toma, claimant again contacted employer and asked for additional medical care. Employer sent him to Dr. David L. Black to determine if surgery was needed. Dr. Black saw claimant on July 8, 1993. Following several examinations and conservative treatment, Dr. Black proposed arthroscopy to ascertain if there were abnormalities. On December 3, 1993, arthroscopic surgery was performed on claimant's right knee. On January 14, 1994, arthroscopic surgery was performed on the left knee.

On April 7, 1994, after several examinations, Dr. Black released claimant. Dr. Black rated claimant's disability as "a 10% impairment of his left lower extremity and an 8% impairment of his right lower extremity." Claimant was asked if he benefited from the surgery. He answered, "Yes. It helped some with the extreme pain. I still had moderate pain afterwards."

Claimant filed a claim for compensation in August 1994. He negotiated with insurer about possible settlement. A settlement offer of $9,700 was made. Claimant authorized acceptance of that offer. Letters were exchanged between insurer's attorney and claimant's attorney. A compromise settlement agreement was submitted for claimant's signature. Claimant decided, however, that the settlement was not in his best interests. He declined to execute the agreement. Claimant was asked the following questions and gave the following answers:

Q. [by claimant's attorney] Larry, did anything occur after this agreement was reached that caused you to believe it was not in your best interest to go forward?

A. Yes, two things occurred. My knees were popping out to where I couldn't withstand standing on them or bearing weight on them. And I understood that if I had to do future surgeries, which my doctor had told me that approximately twenty years I might need to do knee replacement, and I thought I needed to have a second opinion before I decided to settle.

Q. Let me make sure I understand what you said. You said something about a doctor having told you that in twenty years you need— ... You might need a total knee replacement, is that right?

A. Yes.

Q. What doctor told you that?

A. Dr. Black who did surgery on my knee.

Q. Did he tell you that before the agreement or after the agreement?

A. Before.

. . .

Q. [by claimant's attorney] You've told us that after the agreement you saw Dr. Peterson?

A. Yes.

Q. Is that correct? And is that an appointment that I set up for you?

A. Yes.

A letter claimant's attorney received from Dr. Peterson was introduced in evidence. It was dated July 21, 1995. It included the following recommendations and prognosis:

RECOMMENDATIONS: The patient should continue with the non-steroidal anti-inflammatory medication and daily quadricep strengthening exercises. He should avoid doing squatting or a lot of climbing steps or ladder. He may at some point require another surgical procedure, possibly high tibial osteotomy or at some point a total knee arthroplasty on the right knee and possibly arthroscopic evaluation of the left knee should he [sic] symptoms worsen. The high tibial osteotomy probably would be the procedure of choice at this present time due to the patient's age, however [sic] if the patient does tolerate the pain and there is no swelling the patient may opt to wait until his knee deteriorates enough to where he needs a total knee, possibly in 10 years or so. At the present time, he is much to [sic] young to undergo that procedure.

PROGNOSIS: The patient's knee syndrome on the left at the present time is not very bad and probably would improve with quadriceps and hamstring strengthening exercises. The right knee diagnostically already has severe problem on the medial joint line. This deterioration will progress [sic] however could take another 10 to 15 years before it gets significantly deteriorated to require a total knee arthroplasty....

Employer and Insurer filed a Motion to Compel Enforcement of Settlement. The commission denied the motion. It heard evidence and entered the award that is the subject of this appeal on the merits of the case.

■ Point I is directed to the commission's denial of the Motion to Compel En-

forcement of Settlement. Point I asserts that the commission erred in denying the motion "because the finding is not supported by substantial and competent evidence." Employer and insurer argue that the evidence before the commission required the motion to be granted because the testimony was that an agreement had been reached, and "[t]he commission, in arriving at its decision not to enforce the settlement agreement, inappropriately reviewed and relied on information that came about after the agreement for settlement was reached."

Chapter 287 of the Missouri Revised Statutes is the "Workers' Compensation Law." § 287.010.[1] Section 287.390.1 states:

Nothing in this chapter shall be construed as preventing the parties to claims hereunder from entering into voluntary agreements in settlement thereof, *but no agreement by an employee or his dependents to waive his rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission, nor shall an administrative law judge or the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter.* No such agreement shall be valid unless made after seven days from the date of the injury or death. [Emphasis added.]

Section 287.390.1 and its counterpart statutes in earlier revisions have been construed in *Myers v. Cap Sheaf Bread Co.,* 354 Mo. 943, 192 S.W.2d 503 (banc 1945); *Sheets v. Hill Brothers Distributors, Inc.,* 379 S.W.2d 514 (Mo.1964); and *Highley v. Martin,* 784 S.W.2d 612 (Mo.App.1989). *Highley* explained:

In *Sheets v. Hill Brothers Distributors, Inc.,* 379 S.W.2d 514, 518[4] (Mo.

1964), the Supreme Court of Missouri squarely held that an alleged contract of settlement of a claim under The Workmen's Compensation Law (as it was then known) which had not been approved by the Division of Workmen's Compensation (as it was then named) was, by reason of § 287.390.1, RSMo 1959 (identical in all material respects to § 287.390.1, RSMo 1986, ... [[2]]) void and unenforceable in the courts. That holding has never been disturbed....

*Id.* at 616.

*Highley* held that the commission was required, if it determined a settlement agreement had been reached, to decide whether to approve the agreement. *Id.* at 618. The commission failed to determine if the parties entered into an agreement as had been alleged. The award was reversed and the case remanded for the commission to determine if an agreement was reached and, if so, its terms.

In *Myers* the court determined the filing of a "temporary agreement" between an employee and employer constituted filing a claim for compensation for purposes of the statute of limitations then applicable. *See* 192 S.W.2d at 506. In discussing the effect of the temporary agreement, the court observed that an earlier case, *Liberty Mutual Ins. Co. v. Jones,* 344 Mo. 932, 130 S.W.2d 945 (banc 1939), explained that the Workmen's Compensation Commission (as it was then named) had no authority to coerce a settlement between parties; that it did have a veto power, "the power to refuse to approve a settlement already made." 192 S.W.2d at 505 quoting *Liberty,* 130 S.W.2d at 959.

*Myers* held, "The law places a duty upon the Commission to either approve or disapprove any settlement attempted to be made. This duty cannot be avoided. The Commission, to intelligently pass on the merits of a settlement, must acquaint itself

---

**1.** References to statutes are to RSMo 1994, unless stated otherwise.

**2.** § 287.390.1, RSMo 1994, is, likewise, identical in all material respects to § 287.390.1, RSMo 1959.

with the facts of the case." 192 S.W.2d at 506.

The agreement in this case is void in that an administrative law judge or the commission never approved it. § 287.390.1; *Highley v. Martin*, 784 S.W.2d at 616. It is unenforceable in the courts. *Id.*

■ Employer and insurer further contend in Point I that the commission, in determining not to enforce the settlement agreement, erred in reviewing and relying on information that was developed after the agreement had been reached. The "additional information" about which employer and insurer complain was additional medical opinions concerning the need for future medical care, and claimant's testimony concerning his condition subsequent to the time when he agreed to settle his claim. That argument fails. As *Myers* explains, "The Commission, to intelligently pass on the merits of a settlement, must acquaint itself with the facts of the case." 192 S.W.2d at 506. Claimant was entitled to "such medical, surgical, chiropractic, and hospital treatment, ... as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." § 287.140.1. Future medical expenses are compensable. *Gill v. Massman Const. Co.*, 458 S.W.2d 878, 881 (Mo. App.1970). Inquiry as to the claimant's reasonably anticipated future medical needs was proper in order to determine whether the settlement was "in accordance with the rights of the parties as given in [chapter 287]." § 287.390.1. The commission did not err in reviewing claimant's circumstances based on information acquired after he entered into the settlement agreement. Point I is denied.

■ Point II is directed to the award of future medical care to claimant that was made on the merits of the case. Employer and insurer contend the commission erred in awarding future medical treatment "based on evidence that came about after the [employer and insurer] entered an agreement with the [claimant] and his at-

torney for settlement of the case." The settlement agreement was not approved by an administrative law judge or the commission. As heretofore held, it is void and unenforceable in the courts. *Highley, supra.* The evidence supported the commission's award of future medical benefits. *Gill, supra.* Point II is denied. The award is affirmed.

PREWITT, P.J., and CROW, J., concur.